592 So.2d 694 (1991)
Richard M. WRONA, Appellant,
v.
Patricia W. WRONA, Appellee.
Nos. 90-01228, 91-00143.
District Court of Appeal of Florida, Second District.
December 11, 1991.
*695 David T. Weisbrod, Tampa, for appellant.
A. Ann Arledge of Maney, Damsker & Arledge, P.A., Tampa, for appellee.
ALTENBERND, Judge.
The husband appeals a final judgment of dissolution of marriage and a subsequent order awarding attorneys' fees to the wife. Although no single specific element of the award would appear to be an abuse of discretion, we conclude that the overall award to the wife, at least concerning the initial monetary payments required of the husband, is excessive. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). It also appears that the husband will have a difficult time in the future fulfilling reasonable obligations concerning child support and alimony because the couple unnecessarily expended family resources on avoidable divorce litigation. On remand, the trial court shall not reduce child support obligations merely because the parties improvidently spent resources on the divorce proceeding that are now needed for their children. If the trial court determines that avoidable litigation expense was caused by one party more than the other, it is authorized to adjust the equitable distribution so that any resulting decrease in marital assets is borne by the party who caused the needless expense.

I.
This should not have been a complicated divorce. The couple married in 1970 and separated in 1988. Both parties are approximately forty years old. They have four children, ranging in age from six to sixteen. Shortly before the separation, the husband retired from the military after twenty-three years of service. He now works for the federal government in Washington, D.C. He earns approximately $43,000 annually and receives $1,400 each month in military retirement. His net monthly income, including the retirement benefits, totals $3,925.
The wife has a bachelor's degree and, prior to the separation, began to study for a master's degree in library science. She is currently employed as a secretary. Once she finishes her studies, she should earn approximately $20,000 annually.
The couple did not have extensive marital or non-marital assets. They owned a home with at least $70,000 in equity. They had two modest IRA accounts, one old car, and typical household furnishings. The husband had an extensive stamp collection worth $30,000. The wife had jewelry and household collectibles which were appraised at approximately $42,500 in 1984. They had typical family debts, including a $21,000 obligation to the husband's mother. With the assistance of legal counselors who were attempting to achieve a fair result within the framework of Florida law, two objective adults could have resolved this case without unusual expense. Indeed, the great majority of couples involved in such divorces do achieve such a result.
Nevertheless, this couple engaged in extended litigation. Following a lengthy trial, the trial court awarded the wife $250 per month as permanent alimony, and $250 per month for eighteen months as rehabilitative alimony. The parties agreed to sell the marital home. Each was required to pay 50% of the mortgage until the sale and receive 50% of the net proceeds from the sale. The wife was awarded 37% of the *696 husband's military pension. The wife was designated primary residential parent and awarded $450 per month for each minor child. She received most of the household furnishings and collectibles. The husband was subsequently ordered to pay 70% of the wife's attorneys' fees and costs of approximately $17,000.
The husband received the car and his $30,000 stamp collection. He was ordered to pay $15,000 of the promissory note to his mother, with the rest of that obligation being paid from the proceeds of the sale of the family home. Each party received their respective IRA account.
Since the couple had four minor children and were still making mortgage payments when the final judgment was entered, the husband was initially obligated to pay the wife more than $3,500 of his monthly net income of $3,925. Moreover, he was obligated to pay his portion of the wife's attorneys' fees. Following the lengthy divorce proceeding, he had no significant liquid assets beyond his earnings with which to pay these obligations and his own modest living expenses. These obligations exceed the maximum which the husband can realistically pay under the circumstances of this case. Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983).
On remand, we authorize the trial court to consider the current financial condition of the parties. Because the final judgment was entered in March 1990, the period of rehabilitative alimony should be concluded. The parties have informed this court that the house will soon be sold, and one of the children is now an adult. Thus, the economic picture will be substantially different on remand.
While no specific element of the award is necessarily an abuse of discretion, we would suggest that the military retirement pay may have been a factor which caused the overall award to become excessive. It appears that while calculating child support and permanent alimony all of the retirement pay may have been attributed to the husband, even though 37% of that amount was awarded to the wife as an equitable distribution of the retirement fund. Although retirement payments are included in gross income for purposes of child support, the wife was receiving a portion of the payments attributed to the husband. See § 61.30(2)(a)7, Fla. Stat. (1989).

II.
Since we authorize the trial court to consider the current financial condition of the parties on remand, we discuss what will surely be this couple's biggest economic problem in the future. The attorneys' fees at trial in this case approached $60,000.[1] Post-trial attorneys' fees must also be significant.
This couple has four children that need all the care and education that money can buy. Nevertheless, this couple has spent  and our system of divorce has permitted them to spend  roughly 50% of their entire savings on a divorce battle over a big stamp collection and a house full of Hummel figurines.[2] Unless the couple sells their collections to pay their attorneys, it appears that either the attorneys must defer their fees or the parties will ultimately be forced to use virtually all of the equity in their children's homestead to pay for this Pyrrhic victory.
Admittedly, many people approach divorce from a very emotional perspective. It is not the purpose of our system of justice, however, to augment those emotions. It is at best tolerable when our system allows a childless, wealthy couple to engage in extended, expensive divorce litigation, seemingly as a form of perverse entertainment. See generally Katz v. Katz, 505 So.2d 25 (Fla. 4th DCA 1987). It is entirely another matter when our system *697 allows families to spend limited resources that are needed for the welfare of their children on avoidable litigation.
If the attorneys involved in this case had represented a litigation-sophisticated business, they would have been required to analyze the issues at the beginning of the dispute and develop a cost-effective method to resolve those issues and end the dispute. The business would have demanded an estimation of the fees and costs and asked for a method to minimize those nonproductive expenses. Florida's families are entitled to legal advice that is as sensible and cost-effective as that given to Florida's corporations.
Although we believe this case is the great exception and not the rule, it is an example of the stereotype invoked by the public to unfairly discredit the entire marital bar. We are convinced that both the marital bench and bar are strongly committed to an efficient and effective system of divorce. Nevertheless, the system would sometimes work with greater efficiency if at the outset of a divorce proceeding the parties understood the probable cost of the impending litigation and also understood that, no matter who is ordered to pay the attorneys, the payments will reduce either marital assets or future earning capacity that may be needed to pay child support or alimony. Likewise, we believe that parties would be less willing to engage in needless litigation if they understood that their decision to engage in needless litigation may reduce their distribution of marital assets. These two considerations should be discussed with the parties at an early case management conference whenever the trial court discovers that the parties are about to engage in extensive, avoidable litigation.[3]See Fla.R.Civ.P. 1.200(a). This conference would be most helpful if it preceded mediation.[4]See Fla.R.Civ.P. 1.740. At the case management conference, the trial court may be able to help the parties to develop an efficient method to resolve their differences.[5]
In addition to an early case management conference, trial courts should understand that they have authority to take steps designed to avoid needless expense during a divorce proceeding, especially if that expense adversely affects the best interests of the children or jeopardizes the sources for payment of needed alimony. A primary purpose of Florida's divorce law is "to mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." § 61.001(2)(c), Fla. Stat. (1989). The role of the trial court in a divorce is more extensive if children are involved. § 61.052(2), Fla. Stat. (1989). During any period of continuance, the court is authorized to enter appropriate orders for "the preservation of the property of the parties." § 61.052(3), Fla. Stat. (1989). Thus, if given the opportunity during the pendency of a dissolution proceeding, a trial court has the power to prevent the parties from wasting marital assets that are needed for children or for future alimony.[6]
*698 We are aware that the concept of "avoidable litigation expense" is difficult to define. We are not encouraging attorneys to request a case management conference as a matter of course. Likewise, the trial court cannot limit a party's access to the court or prevent litigation expenses that are legitimate. There are occasions, however, in which it is clear that litigation expense cannot be cost-effective or is incurred primarily for emotional reasons. Under these circumstances, the trial court should attempt to protect marital resources that will be needed to support children or to pay alimony.
In this case it is too late for a case management conference. When parties have already expended marital resources on avoidable divorce litigation, the trial courts have the power to adjust the equitable distribution so that the party causing this depletion of marital resources will be the party who suffers the economic loss. Occasionally, this will require more than an order shifting one spouse's attorneys' fees to the other. In other words, these expenses may become a relevant factor "necessary to do equity and justice between the parties" in establishing an equitable distribution of marital assets and liabilities. § 61.075(1)(h), Fla. Stat. (1989). Moreover, the avoidable litigation expense should not become a factor that allows a party to avoid reasonable obligations for alimony and child support.
We emphasize that, from this record, we cannot and do not determine that any specific party was responsible for all or part of the avoidable litigation expense in this case. It seems clear, however, that this divorce did involve extensive, avoidable litigation expense.
On remand, the trial court should determine whether it is necessary to reallocate marital assets to fulfill the terms of an appropriate final judgment. The trial court may require the parties to use nonmarital assets to pay the litigation expense if it determines that the marital assets must be protected for the benefit of the children or as a source of alimony. The parties' reasonable obligations to one another, and especially to their children, should not be reduced merely to preserve their respective collections or to fund past or future avoidable litigation.
Reversed and remanded.
PARKER, A.C.J., and PATTERSON, J., concur.
NOTES
[1] The law firms presenting the appeal did not try the case.
[2] The twenty-eight page final judgment contains page after page of findings evaluating and distributing items such as: 1) "the German beer maid, dancing girl and five ducks," valued at $220 and awarded to the husband, and 2) "Seyei snack china," which was valued at $18 and awarded to the wife as nonmarital property.
[3] We are fully aware that trial courts frequently have little ability to know that the parties are preparing for an expensive, avoidable battle. In cases involving children or temporary alimony, the trial court may have an opportunity to discover this problem at the early stages. Otherwise, it is the attorneys' obligation to bring this problem to the attention of the court so that an early case management hearing can be held.
[4] It is noteworthy that this case was not mediated.
[5] We are not mandating any expedited or abbreviated trial. Indeed, there are cases in which the case management conference should result in a cooling-off period without much litigation expense so that the parties will have the time to confront their differences with less emotion and more objectivity.
[6] The trial court clearly has the authority to limit a judgment for attorneys' fees to an amount that is reasonable to compensate for necessary services. § 61.16, Fla. Stat. (1989). The problem, however, is not restricted to judicial awards of fees. Frequently, one or both parties liberally spend marital assets on their individual attorneys' fees without any court authorization. In this case without court authorization, one party has incurred legal fees twice as large as the other. Unless, the trial court determines that the difference was paid from nonmarital assets or has not yet been paid, it is apparent that these fees have effectively reduced the marital assets available for distribution. Thus, an equal distribution of the remaining marital assets results in an unequal distribution of the marital assets that existed on the date of the filing of the petition.