627 So.2d 505 (1993)
Joseph Richard DRALUS, Appellant/Cross-Appellee,
v.
Bonnie Byer DRALUS, Appellee/Cross-Appellant.
No. 92-00057.
District Court of Appeal of Florida, Second District.
September 24, 1993.
*506 Kevin P. Smith of Davis, Persson, Smith & Darnell, Sarasota, for appellant/cross-appellee.
Mike Piscitelli of Cummings, Lawrence & Vezina, P.A., Tallahassee, for appellee/cross-appellant.
PATTERSON, Judge.
In this dissolution of marriage proceeding, the husband appeals from a postjudgment order which resolves the division of the parties' marital assets. We find no merit in his assertions and affirm the order except as it applies to the wife's attorney's fees.
The wife has cross-appealed contending that the trial court erred in failing to require the husband to pay all or a larger percentage of her attorney's fees. She focuses on the issue that the trial court failed to take into account that the fees she was charged were greatly increased by the husband's unjustified lack of cooperation and intentional destruction of various records in his possession. We agree that it was an abuse of discretion for the trial judge to decline to fully address this issue, and reverse for further evidentiary proceedings.
Neither the husband nor the wife has sought rehearing. However, Mr. Larry Coleman and his law firm, Mulock, Coleman & Thompson, P.A., who have an interest in the issue of attorney's fees charged to the wife, have petitioned to intervene as interested parties for the purpose of rehearing. Both the husband and the wife have responded to Coleman's petition and motion for rehearing. The wife urges that we adhere to our original opinion. The husband's position is neutral. We grant the Coleman motion for rehearing to the extent of substituting this opinion for our original opinion.
At the onset, we must note that we are alarmed by the amount of the fees billed and collected by the wife's attorney.[1] In the arena of marital law, this is a case of very modest financial proportions. The parties' marriage lasted twenty years and produced one minor child who was seventeen years of age at the time of the final hearing. The husband is a salesperson employed by Sears and the wife was working part-time in a flower shop. The net value of their marital assets was $109,201.00, the vast majority of which is comprised of the equity in the marital home and the husband's future pension benefits. The case presented no serious financial issues and no new or unique issues of law. No exceptional results were achieved. The husband made a weak attempt to obtain primary residential custody of the minor son and bickered over the division of personal property accumulated during the marriage. These conflicts produced an abundant crop of pleadings and contempt proceedings focused at the husband. However, the discovery was neither extensive nor complex and the basic conflicts were resolved by stipulations and the uncontested opinion of a certified public accountant the wife retained. The trial consumed one-half day.
Against this backdrop, the wife's attorney billed the wife $10,051.50 in attorney's fees and $2,510.82 in costs for the case through trial. He billed an additional $8,431.00 in fees and $298.70 in costs for the postjudgment proceedings on property distribution and allocation of fees and costs for a *507 grand total of $21,292.02. In contrast, the total net value of marital assets, principally the equity in the marital home, distributed to the wife was $54,600.00. Thus, the wife's attorney's fees and costs represent 39% of her net worth accumulated over the life of the marriage. To pay part of this obligation, the wife was forced to sell her jewelry and obtain a $16,000.00 commercial loan.
In the posttrial proceedings, the wife sought to shift the awesome burden of these fees onto the husband. In support of his charges, the wife's attorney submitted three affidavits to the court which detail costs expended and hours worked.[2] The first affidavit represents charges through trial. The second affidavit shows the charges for the posttrial proceedings. The third affidavit is the wife's attorney's estimate of the fees charged and costs incurred which he believed were unnecessary and resulted from the husband's lack of cooperation and "stonewalling." This amount came to a total of $3,417.70.[3] Trial counsel then stipulated that expert testimony on the issue of fees would not be necessary. The wife's attorney made an unsworn statement to the court explaining the affidavits. The husband's attorney made no objection to the affidavits, made no attempt to question the wife's attorney under oath and, in fact, stated, "I don't have any quarrel with the amount of fees." The trial court made no Rowe[4] findings nor did it request evidence upon which such findings could be based. It made no specific ruling on the issues presented by the third affidavit[5] nor did it make a determination of fault on the part of the husband. The court did express its dismay as to the amount of the fees in relation to the value of the case, stating:
But what we have done in this case, just taking Mr. Coleman's fees, and I'm sure Mr. Dralus has had fees, we've taken assets, total assets of a hundred and nine thousand dollars, and I would guess that at least thirty-five percent of their total assets have gone to pay attorneys to divide that hundred and nine thousand dollars.
I'm not proud of a system that allows that to happen of [sic] peoples [sic] lives, but it's happened.
He then ordered that the husband pay one-third of the fees.
From the record before us, it appears that the judicial process in this case has failed, as far as the attorney's fee issue is concerned. At least part of the blame for this unfortunate circumstance falls upon the husband's trial counsel. Knowing full well that the husband could be required to pay all or a substantial part of the wife's fees, the husband's counsel failed to object to the amount of fees or to require Mr. Coleman to produce proper proof of the reasonableness of the fees charged. In fact, he stipulated to an amount which would raise grave questions in the mind of any reasonable person. Thus, the record is inadequate to enable this court to fully resolve the attorney's fee issue.
Mr. Coleman argues that it is now too late to explore the reasonableness of his fee. He asserts that the stipulation at the trial level, followed by the trial court's award without the benefit of Rowe findings, together with the failure of the wife to question reasonableness in this appeal, deprives us of jurisdiction to address the matter. In support of his position, he cites numerous cases in which appellate courts have declined to address issues which they determine not to be properly before them. There is a distinct difference, however, between declining to consider a matter and lacking the authority *508 to do so. In considering the constitutionality of a statute applied retroactively, our supreme court in Cantor v. Davis, 489 So.2d 18, 20 (Fla. 1986), explained its authority to address issues not raised in the trial court:
Prudence dictates that issues ... should normally be considered at the trial level to assure that such issues are not later deemed waived. Once this Court has jurisdiction, however, it may at its discretion, consider any issue affecting the case.

(Emphasis supplied.) Although such power of an appellate court should be used sparingly, it is clear that it exists. Nonetheless, in this case, it is not necessary to rely solely on our discretionary authority since the wife raised the general issue of attorney's fees in her cross-appeal. Necessarily entwined in the issue of what percentage of fees the husband should pay is the reasonableness of the fees charged. The husband cannot be required to pay all or part of an unreasonable fee.
It is generally accepted that a court in a dissolution proceeding does not have the authority to interfere with the contractual obligation of a client to pay his or her lawyer. An exception to that rule occurs when, as here, the lawyer seeks to impose a charging lien in the dissolution case. See Lochner v. Monaco, Cardillo & Keith, P.A., 551 So.2d 581 (Fla. 2d DCA 1989); Conroy v. Conroy, 370 So.2d 1188 (Fla. 2d DCA 1979), cert. denied, 381 So.2d 765 (Fla. 1980).[6] Mr. Coleman seeks to impose a charging lien on the wife's remaining assets for the unpaid balance of his fee. He has thus submitted for the court's determination the issue of what, if anything, his client should pay him.[7]
We, therefore, reverse the portion of the order relating to the wife's attorney's fees. We do not pass on the reasonableness of Mr. Coleman's fee, since it is within the province of the trial court to determine such issue in its reconsideration of who should pay all or part of those fees. Thus, we remand with the following instructions.
(1) On the motion of any party, or upon the court's own motion, the court shall hold an evidentiary hearing on the issue of Mr. Coleman's charging lien and the reasonable amount of the total attorney's fee to which *509 Mr. Coleman is entitled to be paid by the wife. In such regard, the trial court shall make the findings Rowe requires.[8] The trial court should consider whether an impermissible method of "unit billing" has occurred and if the time charged is limited to only that which should reasonably be devoted to a particular task. See The Florida Bar v. Richardson, 574 So.2d 60 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991).
(2) In the event the amount paid thus far to Mr. Coleman is more than the amount the court determines to be reasonable, the court shall order a refund of the excess, and the wife will be discharged from further obligation on such attorney's fees.[9]
(3) After determining a reasonable fee, the court shall order the husband to pay all or a portion of that fee. In such regard, the trial court must consider if the husband's overall financial posture is superior to that of the wife, see Blackburn v. Blackburn, 513 So.2d 1360 (Fla. 2d DCA 1987), and whether additional work was made necessary by the husband's litigious conduct. See Mettler v. Mettler, 569 So.2d 496 (Fla. 4th DCA 1990). With respect to the wife's future ability to be self-sustaining, the court must consider that the wife suffers from a form of incurable cancer.
Reversed and remanded.
HALL, J., concurs.
SCHOONOVER, A.C.J., dissents with opinion.
SCHOONOVER, Acting Chief Judge, dissenting.
I agree with that portion of the majority opinion which affirms the trial court's decision to transfer the husband's interest in the marital home to the wife. I, however, would also affirm the trial court's decision concerning attorney's fees.
The parties stipulated, through their counsel, that the wife's attorney's fees were reasonable. The court accepted this stipulation and ordered the husband to pay a percentage of those fees. In the wife's cross-appeal, she does not contend that these fees were excessive, but argues that the husband should be ordered to pay a larger percentage, or all, of the fees. Based upon the record presented to us, I would hold that the trial court did not abuse its discretion and would affirm the cross-appeal as well as the husband's main appeal.
The majority first holds that it was an abuse of discretion for the trial judge to decline to fully consider the wife's contention that her attorney's fees were increased by the husband's conduct. A review of the record indicates that the trial judge did address this issue and did consider the conduct of both parties. During the course of the hearings on attorney's fees, the judge asked the parties to try and save some money by agreeing on some matters and informed them that when people did not agree on anything the attorneys are required to spend their money. The trial judge stated that "when we get doone (sic), if neither one of you have anything I won't feel that the attorneys have done a bad job at all. That will be your choice." At the conclusion of the hearings, while making his ruling, the judge, who did not hear the underlying dissolution case and who had not been furnished a transcript of the dissolution hearing, specifically stated that he could not say who was at fault for any increase in fees.[10] After making the determination and considering other factors, e.g. need and ability to pay, the judge ordered the husband to pay a portion of the wife's attorney's fees. Based upon the evidence *510 presented to the trial court, I would affirm that order. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). See also Mettler v. Mettler, 569 So.2d 496 (Fla. 4th DCA 1990); Warnhoff v. Warnhoff, 493 So.2d 52 (Fla. 4th DCA 1986), rev. denied, 503 So.2d 328 (Fla. 1987).
The majority, evidently not content with ruling on the issues raised by the parties, proceeded to consider the judicial process in relation to the attorney's fees. They conclude that the process failed partially because the husband's attorney stipulated to the reasonableness of Mr. Coleman's fee and, therefore, conclude the record was inadequate to fully resolve the attorney's fee issue. The majority holds that the husband cannot be required to pay all or part of an unreasonable fee, and therefore, the reasonableness of Mr. Coleman's fee is brought into question. I agree that Mr. Coleman initially had the burden to establish that his fee was reasonable. If we had been properly asked to consider the question of the reasonableness of his fee, based upon the record presented to us, I would find that he established it. The parties agreed that Mr. Coleman would not have to present expert testimony. He presented affidavits to support the amount of his fee, testified concerning the fee, and submitted himself to questioning. The fact that no one questioned his fee and that the husband's attorney stipulated that it was reasonable should preclude this court from holding that the trial court erred in finding the fee reasonable. I am aware of no authority indicating that the parties in this case could not stipulate to a reasonable fee and that the court was required to make Rowe findings, given such stipulation, before approving the fee. Since a reasonable fee was established, the trial court approved it and none of the parties affected by the fee challenge its reasonableness, the amount of the fee should not be scrutinized just because the amount is large in proportion to the parties' marital assets. See State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990).
The Florida Chapter of the American Academy of Matrimonial Lawyers (Academy), appearing as amicus curiae after Mr. Coleman was allowed to intervene for purposes of the motion for rehearing, contends that appellate courts should not create or determine issues not raised or argued by the parties. The Academy is also concerned that the majority's view alters the fundamental error test and invites appellate courts to ignore what the parties believe are the issues by creating their own agenda. I agree.
In the absence of jurisdictional or fundamental error, it is axiomatic that it is the function of the appellate court to review errors allegedly committed by the trial court, not to entertain for the first time on appeal issues which the complaining party could have, and should have, but did not, present to the trial court. Abrams v. Paul, 453 So.2d 826 (Fla. 1st DCA 1984). See Moorman v. American Safety Equip., 594 So.2d 795 (Fla. 4th DCA), rev. denied, 606 So.2d 1164 (Fla. 1992); Sparta State Bank v. Pape, 477 So.2d 3 (Fla. 5th DCA 1985); Secrist v. Nat'l Serv. Indus., Inc., 395 So.2d 1280 (Fla. 2d DCA 1981); Florida First Nat'l Bank v. Fryd Constr. Corp., 245 So.2d 883 (Fla. 3d DCA 1971); Alliance For Conservation of Natural Resources in Pinellas County v. Furen, 122 So.2d 51 (Fla. 2d DCA 1960).
The majority states that the power of an appellate court to address issues not raised in the trial court should be used sparingly and, then, rather than relying on the discretionary authority it contends we have, states that it is not necessary to rely solely on that because the wife raised the "general" issue of attorney's fees in her cross-appeal. To the extent the majority relies on discretionary authority to review the reasonableness of the amount of attorney's fees, I believe that we are not dealing with a matter of jurisdictional or fundamental error, and therefore, we should not consider this issue. Abrams.
To the extent that the majority opines that we have authority to, and should, consider the reasonableness of the amount of fees, simply because the wife raised the issue on appeal of who should pay the fees, I also disagree. The issue of what is a reasonable fee and the issue of who should pay that fee are two different questions. We should not strain to reach issues which have not been adequately preserved below, Moorman, or even raised on appeal.
*511 The majority agrees that it is generally accepted that a court in a dissolution proceeding does not have the authority to interfere with the contractual obligation of a client and his attorney. The majority states, however, that an exception to this rule occurs when, as here, an attorney seeks to impose a charging lien. The majority then concludes that since the intervenor in this case, Mr. Coleman, sought a charging lien, the case must be reversed to hold an evidentiary hearing on the charging lien and the reasonable amount of fees. To reach this result the majority not only prohibits the parties, subject to trial court approval, from stipulating to a reasonable attorney's fee without a hearing or Rowe findings, but also sets aside a charging lien which no one but the majority has complained about. The majority in a footnote concludes that due notice and a hearing did not occur prior to the order which established the lien and, therefore, vacated the lien. The majority states that although the order imposing the lien recites that it results from a hearing after due notice that there is no indication that notice was given or a hearing conducted. The majority further concludes the record does not reflect service on the wife and is devoid of any indication that the attorneys complied with Rule of Judicial Administration 2.060(h) which requires a client to consent in writing to substitution of counsel. I not only believe that a circuit judge's signature on an order which states that the matter was considered after due notice and a hearing is some evidence that notice was given and a hearing was held, but the pleading attached hereto further establishes notice and compliance with rule 2.060(h). See also Williamson v. Williamson, 335 So.2d 346 (Fla. 1st DCA 1976).
It must also be remembered that when no transcript of the proceedings pertaining to the issues upon which the complaining party seeks review is present in the record, we must assume that the court ruled correctly. Hall v. Bass, 309 So.2d 250 (Fla. 4th DCA 1975). In this instance, the complaining party, i.e. the majority, did not order a transcript of the charging lien hearing. The record reflects that a hearing was held and due notice of the hearing was given. None of the parties complained of the order establishing the charging lien, and it should not be vacated.
The majority states that "[w]e do not pass on the reasonableness of Mr. Coleman's fee" yet they search in vain for an avenue to allow the trial court to "reconsider" the amount of the fee when the only issue raised by the wife is whether the husband should pay a larger portion of the fee. The avenue they chose is to attack a charging lien, which is not directly related to any issue raised by either party, even though the party who contracted to pay Mr. Coleman's fees did not contest either her agreement with Mr. Coleman, the amount of his fees, or imposition of the charging lien. I must conclude that the majority is, above all, passing on the reasonableness of the fee by the result they reach in this opinion.
I would, accordingly, affirm the trial court in all respects.

APPENDIX
 IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF THE STATE
 OF FLORIDA, IN AND FOR MANATEE COUNTY
 In re: The Marriage of Joseph Richard Dralus, Husband,
 and
 Bonnie Byer Dralus, Wife.
 Case No. CA90-2274
 Division: 3
 Fla. Bar No. 368131
 JOINT MOTION FOR CONTINUANCE
COMES NOW the Wife, BONNIE BYER DRALUS, by and through her undersigned attorneys, LARRY K. COLEMAN, ESQUIRE, and BRIAN J. ALMENGUAL, P.A., and files this their Joint Motion for Continuance, and as ground would show the following:
1. That the undersigned counsel, BRIAN J. ALMENGUAL, P.A., entered his Notice *512 of Appearance on behalf of the Wife on or about November 13, 1991.
2. That the undersigned counsel, BRIAN J. ALMENGUAL, P.A., has had conversations with LARRY K. COLEMAN, ESQUIRE, and counsel for the Husband, Eric E. Vigen, Esquire, and counsel for the Husband has advised that the Husband is unwilling to consent to a continuance of the matters presently pending before this Honorable Court.
3. That the undersigned counsel, BRIAN J. ALMENGUAL, P.A., has had insufficient time to carefully review the file maintained by LARRY K. COLEMAN, ESQUIRE, to become adequately and thoroughly prepared for the issues to be heard by this Court, presently set for November 15, 1991, at 10:45 a.m.
4. That no prejudice would result to any party if the Court were to grant a brief continuance of this matter so that BRIAN J. ALMENGUAL, P.A., could become prepared and familiar with the matters and issues to be resolved by this Court.
WHEREFORE, premises considered, the Wife, BONNIE BYER DRALUS, by and through her undersigned attorneys, prays that this Court enter its Order continuing the hearing on the Objection to Entry of Order filed by the Husband, and the Motion to Enforce filed by the Wife.
I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by U.S. Mail to Eric E. Vigen, Esquire, Postal Drawer 4195, Sarasota, Florida 34230, on this 12th day of November, 1991.
 (s) LARRY K. COLEMAN, ESQUIRE
 (s) BRIAN J. ALMENGUAL, P.A.
 (s) BONNIE BYER DRALUS Wife
NOTES
[1] Neither counsel appearing in this appeal were attorneys at the trial level. The term "wife's attorney" used herein refers to her trial counsel, Mr. Coleman.
[2] The affidavits facially appear to be detailed, but on close inspection, reflect such broad categories of tasks performed that they yield very little actual information.
[3] This amount is included in the total of the first affidavit and represents the issue the trial court declined to address.
[4] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).
[5] The dissent points out that the trial judge commented at the conclusion of the proceedings that he had not presided in the case-in-chief and could not say whose fault the fees were. The trial court, however, had before it Mr. Coleman's affidavit that detailed the unnecessary hours expended which were attributed to the husband's fault. The trial court did not address the substantive truth of that affidavit and, therefore, did not rule on the issue.
[6] This line of cases may not reflect the current flow of the law in domestic relation cases. This court in Wrona v. Wrona, 592 So.2d 694 (Fla. 2d DCA 1991), expressed its concern regarding the wasting of marital assets on avoidable litigation expenses and emphasized the authority of the court to limit attorney's fees to an amount that is reasonable to compensate for necessary services. In Browne v. Costales, 579 So.2d 161 (Fla. 3d DCA), review denied, 593 So.2d 1051 (Fla. 1991), the court, in addressing the issue of attorney's fees charged to the wife, found them to be excessive and unreasonable and remanded to the trial court for a redetermination of the wife's fees.
[7] The record contains a joint "Stipulation For Substitution Of Counsel" signed by the wife's withdrawing counsel, Mr. Coleman, and her new trial attorney which the court approved, a "Motion To Adjudicate A Charging Lien" by Mr. Coleman and an "Order of Charging Lien" wherein the trial court imposed the lien. Although the order recites that it results from a hearing after "due notice," there is no indication that notice was given or a hearing conducted. As all three of these documents were executed on the same date (November 15, 1991) and none reflect service on the wife, we conclude that "due notice" and a hearing did not occur. In order for the trial court to comply with our mandate herein, it will be necessary to vacate the order approving the lien. The withdrawal or attempted withdrawal of the "Motion To Adjudicate A Charging Lien" will not divest the trial court of jurisdiction to determine the issue of fees as directed in this opinion.

The dissent contends that since Mr. Coleman served the motion to impose a charging lien on the wife's new attorney that such is all that is required. This would normally be the case were it not for the fact that Mr. Coleman apparently served this motion before the trial court entered the order of substitution. Additionally, the substitution process itself is defective. The motion for substitution is in the form of a stipulation signed by Mr. Coleman and Mr. Almengual, the attorney to be substituted for the wife (Mr. Almengual has not appeared in this appeal). Rule of Judicial Administration 2.060(h) provides:
(h) Substitution of Attorneys. Attorneys for a party may be substituted at any time by order of court. No substitute attorney shall be permitted to appear in the absence of an order. The court may condition substitution upon payment of or security for the substituted attorney's fee and expenses, or upon such other terms as may be just. The client shall be notified in advance of the proposed substitution and shall consent in writing to the substitution. The written consent shall be filed with the court.
(Emphasis added.) This record is devoid of any indication that the attorneys complied with the emphasized part of the rule.
[8] In considering the reasonable number of hours expended, the affidavits in the record before us reflect approximately nineteen hours of "preparation" and eleven hours of "conference with client" in contrast to six hours spent in court by the attorney. The affidavits reflect an additional six hours billed to the wife for telephone conversations with the attorney's legal assistant. These expenditures of time must be viewed in light of the fact that the attorney is an "expert," certified in the area of matrimonial law.
[9] In the event the husband has paid monies to Mr. Coleman which represent the wife's fees, a proration of any refund may be required.
[10] Although the majority opinion discusses the trial of this matter and the issues involved, this court was not furnished with a transcript of the dissolution hearing.