711 So.2d 1225 (1998)
Jonathan DENSON, Appellant,
v.
STATE of Florida, Appellee.
No. 97-00611.
District Court of Appeal of Florida, Second District.
May 13, 1998.
Rehearing Denied June 17, 1998.
Shea T. Moxon of Richard Escobar, P.A., Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Jonathan Denson appeals sentences imposed on January 2, 1997, in four criminal *1226 cases. We have jurisdiction over this appeal pursuant to the Criminal Appeal Reform Act because Mr. Denson preserved a sentencing issue for appeal. See ch. 96-248, Laws of Fla.; § 924.051(3), Fla. Stat. (Supp.1996). We affirm the trial court's ruling on the preserved issue.
In addition to this preserved error, Mr. Denson's attorney has briefed two serious, patent legal errors in his sentences that were not preserved in the trial court. The trial court imposed two habitual offender sentences that are clearly illegal. Moreover, the written sentences are five years longer than the oral pronouncement because the written sentences run consecutively rather than concurrently.
Although he would not have had assistance from court-appointed counsel,[1] Mr. Denson could have challenged the illegal sentence at any time during the pendency of this appeal in the trial court. See Fla. R.App. P. 9.600(d); Johnson v. State, 697 So.2d 1304 (Fla. 2d DCA 1997).[2] Even if the oral/written conflict does not result in an illegal sentence, Mr. Denson could still raise this issue post-appeal pursuant to Florida Rule of Criminal Procedure 3.850 as a sentencing error "otherwise subject to collateral attack," or as an issue of ineffective assistance of trial counsel.[3]
The question in this case, however, is not whether a prisoner left to his or her own resources may seek correction of such errors, but whether an attorney on direct appeal may identify these serious, patent errors in briefing and whether this court has the discretion to order the trial court to correct such errors.[4] Notwithstanding the broad language in section 924.051(3), we hold that when this court otherwise has jurisdiction in a criminal appeal, it has discretion to order a trial court to correct an illegal sentence or a serious, patent sentencing error that is identified by appellate counsel or discovered by this court on its own review of the record. To rule otherwise would be contrary to the intent and goals of the Criminal Appeal Reform Act and would raise substantial constitutional concerns undermining the integrity of the courts.

I. THE PRESERVED ISSUE
On January 2, 1997, the trial court sentenced Mr. Denson in case numbers 93-9284, 94-823, and 94-3707 on violation of probation, and in case number 96-3993 on a new offense. The sentencing hearing in this case was relatively long and included testimony from several witnesses. Prior to the hearing, Mr. Denson's lawyers filed a lengthy sentencing memorandum raising numerous issues. The trial court was unaware of the *1227 memorandum until the hearing and never had an adequate opportunity to read it.
At the hearing, the primary legal issue discussed by the parties was whether a prior conviction for conspiracy to deliver cocaine could be a qualifying offense to support treatment as a habitual felony offender for purposes of sentencing on the two 1996 convictions for delivery of cocaine. The trial court held that conspiracy to deliver was not "a violation of [section] 893.13 relating to the purchase or the possession of a controlled substance, "see § 775.084(1)(a)(3), Fla. Stat. (1995), and that the offense could be used to qualify Mr. Denson for treatment as a habitual offender. Although the Fifth District has held that possession of cocaine with intent to sell is not a qualifying offense, see Houser v. State, 666 So.2d 158 (Fla. 5th DCA 1995), we agree with the trial court that conspiracy to traffic may be a qualifying offense. There is no question that Mr. Denson preserved this issue for review by his arguments and objections in the trial court, and therefore this court has jurisdiction to review his case pursuant to section 924.051(3).

II. THE UNPRESERVED ISSUES
In case number 96-3993, Mr. Denson pleaded guilty to two counts of delivery of cocaine and two counts of possession of cocaine. At the sentencing hearing, the trial court orally pronounced that Mr. Denson would be sentenced as a habitual felony offender to two concurrent terms of ten years' imprisonment on the possession charges, and to two concurrent terms of fifteen years' imprisonment on the delivery charges, followed by fifteen years' probation. It announced that these sentences were to run concurrently with each other. In case number 93-9284, the trial court sentenced Mr. Denson to five years' imprisonment, and in case numbers 94-823 and 94-7307, it imposed a two-year term of imprisonment in each case. The trial court orally ordered the sentences in the 1993 and 1994 cases to run concurrently with each other and consecutively to the habitual felony offender sentences in the 1996 case. As the trial court explained on the record, it effectively sentenced Mr. Denson to twenty years' imprisonment (with the first fifteen years to be served as a habitual felony offender), followed by fifteen years' probation. Although the defendant's lengthy trial memorandum argued that the law did not allow a habitual sentence for possession of cocaine, the defendant failed to request and receive a ruling on this issue at the hearing.
The written sentences order the two habitual felony offender sentences on the 1996 delivery convictions to run consecutively to the two habitual felony offender sentences on the 1996 possession offenses and the sentences imposed in the 1993 and 1994 cases. The written sentences also reflect that the two sentences on the 1996 possession convictions will run concurrently with the sentences in the 1993 and 1994 cases. The effect of the written sentences is imprisonment for twenty-five years as a habitual felony offender, followed by a fifteen-year term of probation.
This sentencing scenario presents two serious unpreserved sentencing errors. First, as the State concedes, there is no legal authority permitting a ten-year term of imprisonment or a habitual offender sentence for the third-degree felony of possession of cocaine. See § 775.084(1)(a)(3), Fla. Stat. (1995); Belton v. State, 673 So.2d 880 (Fla. 2d DCA 1996).[5] Second, the five-year increase in the term of imprisonment in the written sentence clearly violates the rule that the written sentence must conform to the oral pronouncement. See D.F. v. State, 650 So.2d 1097 (Fla. 2d DCA 1995). Prior to the Criminal Appeal Reform Act, we would have ordered the trial court to correct both of these errors, even though they were unpreserved.

III. THE CRIMINAL APPEAL REFORM ACT
The legislative and judicial efforts to reform the criminal appeals process over the *1228 last several years have been necessary and productive. The Fifth District has recently discussed the Criminal Appeal Reform Act and the supreme court's related changes in the rules of criminal and appellate procedure. See Maddox v. State, 708 So.2d 617 (Fla. 5th DCA 1998). This opinion will not repeat the thorough discussion in Maddox, and we have no need to decide whether we agree with the entirety of its holding. It is worth emphasizing, however, that the intent and the goals of this collective effort have been to minimize frivolous appeals, to maximize the efficiency of the appellate system, and to place the task of correcting most sentencing errors in the lap of the circuit court. In no district are those goals more important than in the Second District with its chronic backlog of criminal appeals.
The critical statutory amendment affecting our jurisdiction and scope of review is contained in section 924.051(3). That provision states:
An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.
We read the first sentence as an effort to restrict our jurisdiction over the case. An appeal "may not be taken," i.e., the appellate court has no jurisdiction to hear an appeal, unless a prejudicial error is either preserved or is fundamental. The supreme court addressed this limitation on our jurisdiction in In re Amendments to the Florida Rules of Appellate Procedure, 685 So.2d 773 (Fla. 1996), and held that the courts will abide by reasonable legislative restrictions on a defendant's constitutional right of appeal.
The second sentence attempts to restrict either our scope of review or our standard of review because, even if we have jurisdiction, the legislature is attempting to prohibit the court from reversing a sentence on an issue concerning a prejudicial error that is neither preserved nor fundamental.[6] As a general rule, this statute comports with the appellate courts' own customary restrictions on their standard of review. However, there are rare occasions when the courtsfor the orderly administration of justice and for due process concernshave not followed this general rule.[7] In light of the constitutional separation of powers, the legislature cannot unreasonably restrict our scope or standards of review when due process and the orderly administration of justice require that we review such issues.[8] When this court already has jurisdiction over a criminal appeal because of a properly preserved issue, we do not avoid a frivolous appeal or achieve efficiency by ignoring serious, patent sentencing errors. Limiting our scope or standard of *1229 review in these circumstances is not only inefficient and dilatory, but also risks the possibility that a defendant will be punished in clear violation of the law.[9]
Because the legislature has used the term "fundamental" in both the jurisdictional sentence and the standard of review sentence in section 924.051(3) without any definition, there is danger in assuming that the legislative usage of this term is equivalent to all prior judicial usage. It is no secret that the courts have struggled to establish a meaningful definition of "fundamental error" that would be predictive as compared to descriptive.[10] The error which the legislature is describing in section 924.051(3) is an error that is not merely correctable on direct appeal without preservation, but it is an error that is so egregious and without alternative remedy that it warrants the appellate court exercising jurisdiction in the case solely for the purpose of correcting that error. So defined, there is little question that "fundamental error" for purposes of the Criminal Appeal Reform Act is a narrower species of error than some of the errors previously described as fundamental in case law. Because the sentencing errors in this case could have been challenged by a motion pursuant to Florida Rule of Criminal Procedure 3.800(b) prior to appeal and because they may still be challenged by postconviction motions, neither of the sentencing errors in this case fits within this definition of fundamental error.[11] Indeed, although we do not reach the issue, the Fifth District may be correct in concluding that no sentencing error is fundamental for purposes of this new act. See Maddox, 708 So.2d at 618. Without a preserved error, these unpreserved sentencing errors would not give us jurisdiction over this appeal.[12]
As tempting as it may be to wash our hands of every unpreserved sentencing error on direct appeal, we are troubled by a rule which would require us to close our eyes when a serious error is obvious in the record. This court has held that Florida Rule of Criminal Procedure 3.800(a) cannot be used to review a sentencing error that could have been raised on direct appeal but for the failure to file a motion pursuant to rule 3.800(b). See Chojnowski v. State, 705 So.2d 915 (Fla.2d DCA 1997). Prisoners are entitled to legal representation on direct appeal, but not in most postconviction proceedings. See § 924.051(9), .066(3). At least until our newly revised rules of appeal for sentencing errors have been fully delineated, there is a real risk that serious sentencing errors, raising significant due process concerns, may not be corrected or may not be corrected in time to provide meaningful relief to a prisoner filing pro se motions if they cannot be corrected with the assistance of counsel on direct appeal.
If a goal of criminal appeal reform is efficiency, we are hard pressed to argue that *1230 this court should not order correction of an illegal sentence or a facial conflict between oral and written sentences on a direct appeal when we have jurisdiction over other issues. Although it is preferable for the trial courts to correct their own sentencing errors, little is gained if the appellate courts require prisoners to file, and trial courts to process, more postconviction motions to correct errors that can be safely identified on direct appeal. Both Mr. Denson and the Department of Corrections need legal written sentences that accurately reflect the trial court's oral ruling. We conclude that our scope and standard of review in a criminal case authorizes us to order correction of such a patent error.
Efficiency aside, appellate judges take an oath to uphold the law and the constitution of this state. The citizens of this state properly expect these judges to protect their rights. When reviewing an appeal with a preserved issue, if we discover that a person has been subjected to a patently illegal sentence to which no objection was lodged in the trial court, neither the constitution nor our own consciences will allow us to remain silent and hope that the prisoner, untrained in the law, will somehow discover the error and request its correction. If three appellate judges, like a statue of the "see no evil, hear no evil, speak no evil" monkeys, declined to consider such serious, patent errors, we would jeopardize the public's trust and confidence in the institution of courts of law. Under separation of powers, we conclude that the legislature is not authorized to restrict our scope or standard of review in an unreasonable manner that eliminates our judicial discretion to order the correction of illegal sentences and other serious, patent sentencing errors.[13]
Accordingly, we affirm Mr. Denson's habitual felony offender sentences imposed on the delivery of cocaine convictions in the 1996 case. We reverse the remaining sentences and remand for resentencing. Because minor unresolved issues in Mr. Denson's scoresheets may now impact on the sentences imposed on remand, we instruct the trial court to resolve those contested issues during resentencing.
Because our power to address these issues is not clear and presents an issue of great public importance, we certify the following questions to the supreme court:
1. IF A DISTRICT COURT HAS JURISDICTION TO REVIEW A CRIMINAL APPEAL PURSUANT TO SECTION 924.051, FLORIDA STATUTES (SUPP.1996), DOES IT HAVE DISCRETION TO ORDER THE TRIAL COURT TO CORRECT AN UNPRESERVED ILLEGAL SENTENCE?
2. IF A DISTRICT COURT HAS JURISDICTION TO REVIEW A CRIMINAL APPEAL PURSUANT TO SECTION 924.051, FLORIDA STATUTES (SUPP.1996), MAY IT ORDER THE TRIAL COURT TO CORRECT A WRITTEN SENTENCE IMPOSING A LONGER TERM OF IMPRISONMENT THAN THAT CONTAINED IN THE ORAL PRONOUNCEMENT?
Affirmed in part, reversed in part, and remanded for resentencing with directions.
CAMPBELL, A.C.J., and GREEN, J., concur.
NOTES
[1] See § 924.051(9), .066(3), Fla. Stat. (Supp. 1996).
[2] Our case law and the 1996 comment to Florida Rule of Appellate Procedure 9.600 create some confusion concerning the trial courts' jurisdiction to correct illegal sentences during the pendency of an appeal. In Carter v. State, 680 So.2d 603 (Fla. 2d DCA 1996), this court held en banc that a motion pursuant to Florida Rule of Criminal Procedure 3.800(a) could address only a clerical error during the pendency of an appeal. This ruling reconfirmed our decision in Easterling v. State, 596 So.2d 103 (Fla. 2d DCA 1992), which was based on Barber v. State, 590 So.2d 527 (Fla. 2d DCA 1991). Carter proved to be a short-lived decision because rule 9.600(d) was created effective January 1, 1997. See In re Amendments to the Florida Rules of Appellate Procedure, 685 So.2d 773 (Fla.1996). To accommodate the Criminal Appeal Reform Act, this new provision gives trial courts concurrent jurisdiction during an appeal to consider motions filed pursuant to rule 3.800(a). Although the 1996 comment references our decision in Barber, we interpret the concurrent jurisdiction to include all motions to correct illegal sentences and not just those motions addressing clerical errors.
[3] In Dawson/Knapp v. State, 698 So.2d 266 (Fla. 2d DCA 1997), over the dissent of Judge Parker, this court corrected an oral/written discrepancy as an illegal sentence under rule 3.800(a). In light of Chojnowski v. State, 705 So.2d 915 (Fla. 2d DCA 1997), there is at least a possibility that an oral/written discrepancy can no longer be corrected by such a postconviction motion.
[4] We recognize that the rules of procedure do not give the defendant the right to raise such serious, patent sentencing errors as formal issues on appeal for which he or she is entitled to relief. Fla. R.App. P. 9.140(d). Ethically, however, we will not prohibit appellate counsel from succinctly identifying such issues and requesting this court to exercise its discretion to order the trial court to correct them without need for additional postconviction motions when this court has jurisdiction due to a preserved issue or a fundamental error.
[5] Although the State concedes this error, it maintains that we should follow Middleton v. State, 689 So.2d 304 (Fla. 1st DCA 1997), and decline to order the trial court to correct this error. We are not certain that our opinion conflicts with Middleton because it is not clear from that opinion whether there was a preserved issue or a fundamental error that gave the First District jurisdiction. Moreover, the First District treated the habitual offender sentences as erroneous rather than illegal.
[6] It is debatable whether this sentence restricts our scope of review, i.e., our power to review an issue, or our standard of review, i.e., the test we use to determine whether the trial court committed error. These two concepts are sometimes interrelated. When the legislature prohibits an appellate court from correcting an error that is neither preserved nor fundamental, it is fashioning a standard of review that states we can find no reversible error in the absence of one of these two factors. However, the practical effect of such a standard of review is to place issues entirely outside our scope of review. A pure limitation on our scope of review restricts our power to review a particular issue in all cases. A limitation based on preservation restricts our power only in specific cases where the issue is not preserved.
[7] For example, without necessarily regarding "purely legal sentencing" errors as fundamental, the supreme court has allowed district courts to review these issues without a contemporaneous objection at trial. Ashley v. State, 614 So.2d 486, 490 (Fla.1993); Taylor v. State, 601 So.2d 540 (Fla.1992). See also Dralus v. Dralus, 627 So.2d 505 (Fla. 2d DCA 1993).
[8] The courts have previously declined to comply with an unreasonable restriction upon their scope of review. The legislature attempted to prevent the appellate courts from reviewing the extent of a departure under the sentencing guidelines in all cases. See § 921.0016(2), Fla. Stat. (1997). Although the courts have generally honored this limitation on their scope of review, the supreme court has authorized the appellate courts to review the extent of departure when based on certain unscored offenses. See Harris v. State, 685 So.2d 1282 (Fla.1996); Puffinberger v. State, 581 So.2d 897 (Fla.1991).
[9] In this regard, we note that a sentencing error may not be "raised" on appeal unless preserved in the trial court pursuant to rule 9.140(d), but the supreme court has preserved the right of a district court, "in the interest of justice," to "grant any relief to which any party is entitled" in a criminal appeal. Fla. R.App. P. 9.140(h).
[10] Generally, the cases define fundamental error as error that goes to the "foundation of the case" or the "merits of the cause of action." State v. Smith, 240 So.2d 807, 810 (Fla.1970). The "foundation" of a case is not a test that can be measured or predicted. Even tests invoking the compelling "interests of justice" or the need for "public confidence" in the judicial system are difficult to measure or predict. Smith v. State, 521 So.2d 106, 108 (Fla.1988); Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 584 (Fla. 2d DCA 1996).
[11] Because the oral/written discrepancy in this case is intertwined with the illegal sentence, it is clear that it can be corrected in conjunction with the illegal sentence. Cf. Middleton, 689 So.2d at 304 (erroneous habitual offender sentence not fundamental error and not reviewable on direct appeal under act). Minor sentencing errors are not fundamental even when it is unlikely that they can be corrected by postconviction motion. See Mason v. State, 698 So.2d 914 (Fla. 4th DCA 1997) ($1000 cost item not orally announced is not fundamental error under act).
[12] Although we agree with much of the discussion in Harriel v. State, 710 So.2d 102 (Fla. 4th DCA 1998), our decision conflicts with Harriel in holding that an illegal sentence is not fundamental for purposes of the Criminal Appeal Reform Act. Although illegal sentences may be corrected "any time," because the place for that correction is in the trial court pursuant to rule 3.800(a), we cannot conclude that they are fundamental errors giving jurisdiction to the district courts of appeal to review these issues on direct appeal as a matter of right.
[13] To avoid any confusion, we do not regard typical errors concerning costs, conditions of probations, or jail credit as falling within this description.