760 So.2d 89 (2000)
David L. MADDOX, Petitioner,
v.
STATE of Florida, Respondent.
Alfonso Edwards, Petitioner,
v.
State of Florida, Respondent.
Jason Tyrone Speights, Petitioner,
v.
State of Florida, Respondent.
Terry Hyden, Petitioner,
v.
State of Florida, Respondent.
Nos. SC92805, SC93000, SC93207 and SC93966.
Supreme Court of Florida.
May 11, 2000.
*93 James B. Gibson, Public Defender, and Michael S. Becker, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida, for Petitioner in No. SC92805.
James B. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida, for Petitioner in No. SC93000.
Nancy A. Daniels, Public Defender, and Angela Shelley, P. Douglas Brinkmeyer and Michael J. Minerva, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, Florida, for Petitioner in No. SC93207.
Richard L. Jorandby, Public Defender, and Susan D. Cline, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Petitioner in No. SC93966.
Robert A. Butterworth, Attorney General, James W. Rogers, Assistant Attorney General, Tallahassee, Florida, and Wesley Heidt, Assistant Attorney General, Daytona Beach, Florida, for Respondents David L. Maddox and Alfonso Edwards in Nos. SC92805 and SC93000.
Robert A. Butterworth, Attorney General, and James W. Rogers and Trina Kramer, Assistant Attorneys General, Tallahassee, Florida, for Respondent Jason Speights in No. SC93207.
Robert A. Butterworth, Attorney General, James W. Rogers, Assistant Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and Ettie Feistmann and Elaine L. Thompson, Assistant Attorneys General, West Palm Beach, Florida, for Respondent Terry Hyden in No. SC93966.
PARIENTE, J.
We have for review the en banc decision of the Fifth District Court of Appeal in *94 Maddox v. State, 708 So.2d 617 (Fla. 5th DCA 1998), which expressly and directly conflicts with the en banc opinion of the First District Court of Appeal in Nelson v. State, 719 So.2d 1230 (Fla. 1st DCA 1998), the en banc opinion of the Second District Court of Appeal in Bain v. State, 730 So.2d 296 (Fla. 2d DCA 1999), the opinion of the Third District Court of Appeal in Jordan v. State, 728 So.2d 748 (Fla. 3d DCA 1998), review granted, 735 So.2d 1285 (Fla.1999) (Case No. 95,325), and the en banc opinion of the Fourth District Court of Appeal in Hyden v. State, 715 So.2d 960 (Fla. 4th DCA 1998).[1] The conflict issue is whether any unpreserved errors related to sentencing can be raised on direct appeal in light of the adoption of section 924.051, Florida Statutes (Supp.1996), enacted as part of the Criminal Appeal Reform Act of 1996 (the Act), and this Court's procedural rules promulgated in Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103 (Fla.1996) (hereinafter Amendments I).
For purposes of oral argument, on our own motion, we consolidated Maddox with Hyden, Edwards v. State, 707 So.2d 969 (Fla. 5th DCA 1998), and Speights v. State, 711 So.2d 167 (Fla. 1st DCA 1998), quashed and remanded, 749 So.2d 503 (Fla.1999). On our own motion, we now consolidate these cases for disposition in this opinion.[2]
We anticipate that the amendments to rule 3.800(b) recently promulgated by this Court in Amendments to Florida Rules of Criminal Procedure 3.111(e) & 3.800 & Florida Rules of Appellate Procedure 9.020(h), 9.140, & 9.600, 761 So.2d 1015 (Fla.1999), reh'g granted, 761 So.2d at 1025 (hereinafter Amendments II), should eliminate the problem of unpreserved sentencing errors raised on direct appeal because the time in which a defendant can file a motion to correct a sentencing error in the trial court is expanded to the time the first appellate brief is filed. However, we must still address the conflict issue for those noncapital defendants[3] whose appeals fall into the window period between the effective date of the Act and the effective date of our recent amendment to rule 3.800 in Amendments II.
We conclude that nothing in the Act or our prior jurisprudence prevents appellate courts from addressing certain unpreserved sentencing errors on direct appeal. Thus, in those cases where the appellant's first appellate brief was filed before our recent enactment of rule 3.800(b) in Amendments II, we approve of the district courts' holdings in Nelson, Bain, Jordan and Hyden to the extent that they recognize *95 that a narrow class of unpreserved sentencing errors can be raised on direct appeal as fundamental error.[4] We disapprove of the Fifth District's decision in Maddox to the extent it holds that no sentencing error may be considered on direct appeal unless such error has been preserved for review by either a contemporaneous objection during the sentencing hearing or a motion to correct sentence filed in the trial court after the sentencing hearing pursuant to rule 3.800(b). However, as will be explained in this opinion, we agree with the ultimate result in Maddox that sentencing errors regarding assessment of costs are not fundamental errors that can be raised on appeal if not preserved for appellate review. 708 So.2d at 617.

CONSIDERATION OF "FUNDAMENTAL" SENTENCING ERRORS ON DIRECT APPEAL IN LIGHT OF THE ACT
The primary sections of the Act that are at issue in this case provide that:
(3) An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.
(4) If a defendant pleads nolo contendere without expressly reserving the right to appeal a legally dispositive issue, or if a defendant pleads guilty without expressly reserving the right to appeal a legally dispositive issue, the defendant may not appeal the judgment or sentence.
§ 924.051(3)-(4). The goal of the 1996 enactment of the Criminal Appeal Reform Act was "to ensure that all claims of error are raised and resolved at the first opportunity." § 924.051(8). This goal is consistent with the policy of this Court that sentencing errors should be handled by the trial courts at the earliest opportunity rather than on appeal or in the postconviction process. See Amendments II, 761 So.2d at 1025-27.
Section 924.051(3) specifically gives defendants the right to raise, and appellate courts the authority to correct, "fundamental error." The Act neither defines "fundamental error" nor differentiates between trial and sentencing error. It is certainly reasonable to assume that, rather than attempting to alter the definition of fundamental error as it evolved through case law, the Legislature intentionally deferred to the judicially created definition of "fundamental error." See Bain, 730 So.2d at 301; see also State v. Mitro, 700 So.2d 643, 645 (Fla.1997) (stating that where a term is not defined by statute, the courts may resort to the previous case law definition in order to determine the plain meaning of the term).
As Judge Altenbernd observed, "In its narrowest functional definition, `fundamental error' describes an error that can be remedied on direct appeal, even though the appellant made no contemporaneous objection in the trial court and, thus, the trial judge had no opportunity to correct the error." Judge v. State, 596 So.2d 73, 79 n. 3 (Fla. 2d DCA 1991). This Court's previous definitions of "fundamental error" generally describe error that occurred at trial. For example, the Court has described fundamental error as error that "goes to the foundation of the case or the *96 merits of the cause of action." J.B. v. State, 705 So.2d 1376, 1378 (Fla.1998); see State v. Smith, 240 So.2d 807, 810-11 (Fla. 1970); see also Gudinas v. State, 693 So.2d 953, 961 (Fla.1997) ("Fundamental error is `error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'") (quoting Archer v. State, 673 So.2d 17, 20 (Fla.1996), which was quoting State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991)). This Court has also defined fundamental error as one "where the interests of justice present a compelling demand for its application." Sochor v. State, 619 So.2d 285, 290 (Fla.1993) (quoting Ray v. State, 403 So.2d 956, 960 (Fla.1981)); see Smith v. State, 521 So.2d 106, 108 (Fla.1988).
Although most of this Court's definitions of fundamental error describe trial error, this Court has at times referred to unpreserved errors in the sentencing context as "fundamental" and corrected them on direct appeal. See State v. Johnson, 616 So.2d 1, 3 (Fla.1993); Wood v. State, 544 So.2d 1004 (Fla.1989). In Johnson, for instance, we found that the defendant's claim that the habitual offender statute violated the single subject requirement constituted fundamental error. 616 So.2d at 3-4. In reaching this conclusion, we noted that to be fundamental the "error must be basic to the judicial decision under review." Id. at 3. We concluded that because the statute "affect[ed] a quantifiable determinant of the length of sentence that may be imposed on a defendant," it involved "fundamental `liberty' due process interests." Id. We recently reaffirmed this principle with regard to a claim that the session law enacting sentencing guidelines violated the single-subject requirement. See Heggs v. State, 759 So.2d 620, 623 (Fla.2000) (citing Johnson, 616 So.2d at 2). We have also used the term "fundamental" to address the imposition of costs without statutorily required notice as resulting in a denial of procedural due process, even though this error does not affect the length of the defendant's sentence or a liberty interest. See Wood, 544 So.2d at 1006.
Although the entry of a guilty plea foreclosed the defendant's ability to appeal events occurring before the entry of the plea other than a claim that the trial court lacked subject matter jurisdiction, see Robinson v. State, 373 So.2d 898, 902-03 (Fla. 1979),[5] the willingness of the appellate courts to correct unpreserved sentencing errors as "fundamental" extended to errors that occurred following a guilty plea. See Wood, 544 So.2d at 1005-06; see also Larson v. State, 572 So.2d 1368, 1371 (Fla. 1991) (examining alleged error in condition of probation of defendant who pleaded guilty to determine whether it constituted fundamental error). For example, the defendant in Wood had pleaded guilty, but we found that the imposition of costs without the statutorily required notice was a "fundamental" sentencing error that violated due process. 544 So.2d at 1005-06.
We thus conclude that section 924.051(3) of the Act specifically recognizes the ability of defendants to raise fundamental sentencing errors on direct appeal. We likewise find that the language of section 924.051(4), concerning the right to appeal following the entry of a plea of guilty or nolo contendere, does not preclude this Court from considering on appeal fundamental sentencing errors. In Amendments I, we found that under section 924.051(4), "the principle of Robinson controls" and defendants "must have the right to appeal that limited class of issues described in Robinson." Amendments I, 696 So.2d at 1105. Accordingly, defendants who entered a plea of guilty or nolo contendere without expressly reserving an issue for appellate review may nonetheless *97 raise sentencing errors on direct appeal as recognized in Robinson.[6]
We next examine whether this Court's procedural rules preclude the consideration of all unpreserved sentencing errors on appeal, no matter the nature of the error or its seriousness. In concluding that unpreserved sentencing errors should no longer be considered on direct appeal, the Fifth District in Maddox relied upon this Court's promulgation of procedural rules that both provide a mechanism for preservation of sentencing errors following the hearing and require that sentencing errors be preserved for review. See Fla. R.Crim. P. 3.800(b); Fla. R.App. P. 9.140(b)(2)(B), 9.140(d).[7]
We acknowledge that rule 9.140(d) requires that sentencing errors be preserved, either through a contemporaneous objection or the filing of a motion pursuant to Florida Rule of Criminal Procedure 3.800(b). We adopted both of these rules in 1996 in response to the passage of the Act. See Amendments I, 696 So.2d at 1105, 1131. In adopting these rules, we anticipated that we would further the goal of the Act by giving defendants an appropriate mechanism for correcting and preserving sentencing errors. However, as we discussed extensively in Amendments II, this goal was not realized because the procedural mechanism provided by rule 3.800(b) did not function as we envisioned. 761 So.2d at 1017. Because section 924.051 allows fundamental error to be raised on appeal, if we were to mechanically apply rule 9.140(d) to bar consideration of any sentencing errors in the window period, no matter how serious the error was, we would "obviously frustrate, rather than recognize" the Legislature's intent in adopting the Act. Nelson, 719 So.2d at 1233.
As the Second District pointed out in Bain, "[T]he question of whether an error is fundamental has never turned on the existence vel non of a mechanism for correcting it in the lower court." 730 So.2d at 302. Further, and importantly, we recognized in Amendments II that rule 3.800(b) as it was originally promulgated fell "far short of the goal of providing a `failsafe' method for defendants to seek to have sentencing errors corrected in the trial court and thereby preserve them for appellate review." 761 So.2d at 1017. Thus, the failure of rule 3.800(b) to provide a failsafe method for defendants to raise *98 and preserve sentencing errors, see id., is a major consideration in our decision not to give literal effect to rule 9.140(d) during the window period.
The reason that courts correct error as fundamental despite the failure of the parties to adhere to procedural rules requiring preservation is not to protect the interests of a particular aggrieved party, but rather to protect the interests of justice itself. See Bain, 730 So.2d at 302. Thus, we conclude that for those defendants who did not have the benefit of our recently promulgated amendment to rule 3.800(b) in Amendments II, during this window period the appellate courts should continue to correct unpreserved sentencing errors that constitute fundamental error. To hold otherwise would neither advance judicial efficiency nor further the interests of justice. However, for those defendants who had available the procedural mechanism of our recently amended rule 3.800(b), we anticipate that the interests of justice should be served by the ability of appellate counsel to first raise the issue in the trial court prior to filing the first appellate brief.

THE GOAL OF JUDICIAL EFFICIENCY
In addition to our recognition of the possibility that the failure to review certain serious sentencing errors would undermine the fairness of the judicial process, we do not find that rigid adherence to the contemporaneous objection rule always serves the goal of judicial efficiency. As Judge Altenbernd observed:
If a goal of criminal appeal reform is efficiency, we are hard pressed to argue that this court should not order correction of an illegal sentence or a facial conflict between oral and written sentences on a direct appeal when we have jurisdiction over other issues. Although it is preferable for the trial courts to correct their own sentencing errors, little is gained if the appellate courts require prisoners to file, and trial courts to process, more postconviction motions to correct errors that can be safely identified on direct appeal.
Denson v. State, 711 So.2d 1225, 1229-30 (Fla. 2d DCA 1998).
The assumption of some of the appellate courts that declined to address even serious unpreserved sentencing errors on appeal was that defendants would not be without a remedy because they could seek postconviction relief. See Maddox, 708 So.2d at 621. For example, the Fifth District reasoned that:
Certainly, there is little risk that a defendant will suffer an injustice because of this new procedure; if any aspect of a sentencing is "fundamentally" erroneous and if counsel fails to object at sentencing or file a motion within thirty days in accordance with the rule, the remedy of ineffective assistance of counsel will be available. It is hard to imagine that the failure to preserve a sentencing error that would formerly have been characterized as "fundamental" would not support an "ineffective assistance" claim.
Id. (emphasis supplied). But see Judge, 596 So.2d at 79 n. 3. Even assuming the availability of postconviction relief for sentencing errors not preserved on direct appeal, if a goal of the reform is efficiency, we are hard-pressed to conclude that shifting to defendants the burden of filing postconviction motions, and to trial courts the burden of processing these additional motions, advances the overall goal of judicial efficiency.
Another potential problem with requiring defendants to correct unpreserved sentencing errors through postconviction motions is that defendants in noncapital cases will not necessarily be afforded counsel during collateral proceedings. See Russo v. Akers, 724 So.2d 1151, 1152-53 (Fla. 1998) (stating that there is no absolute right to counsel in a postconviction proceeding). Judge Altenbernd has expressed *99 the additional concern that to the extent that collateral relief replaces direct appeal as the means for correcting these serious sentencing errors, the defendant may be constitutionally entitled to counsel on postconviction claims. See Bain, 730 So.2d at 309 (Altenbernd, J., dissenting).
As the State made clear during oral argument, it has no interest in any defendant serving a sentence that is longer than the sentence authorized by law. Based on all these considerations, we conclude that the interests of justice will not be advanced if appellate courts decline to correct certain categories of sentencing errors for criminal defendants whose appellate briefs were filed during the window period after the enactment of the Act but before the adoption of our recent procedural changes in Amendments II.

TYPES OF UNPRESERVED SENTENCING ERRORS THAT SHOULD BE CORRECTED ON APPEAL DURING THIS WINDOW PERIOD
The more difficult question arises when we attempt to provide a meaningful predictor of what unpreserved sentencing errors should still be considered on direct appeal after the Act and before the effective date of Amendments II. "It is no secret that the courts have struggled to establish a meaningful definition of `fundamental error' that would be predictive as compared to descriptive." Denson, 711 So.2d at 1229.
In addition to the lack of a predictive definition of fundamental error, in many cases decided before the Act, this Court did not analyze whether an unpreserved sentencing error constituted fundamental error before correcting it on appeal. Compare Wood, 544 So.2d at 1006 (characterizing a sentencing error as fundamental), with, e.g., State v. Williams, 712 So.2d 762, 764 (Fla.1998) (correcting a deviation in the oral pronouncement without analyzing whether it constituted fundamental error). For example, in State v. Rhoden, 448 So.2d 1013, 1016 (Fla.1984), we acknowledged the State's argument that the unpreserved sentencing error could not be addressed because it did not constitute fundamental error, but then corrected the error without specifically requiring that the error be fundamental. As Judge Griffin observed, prior to the Act, the district courts of appeal were "accustomed to simply correcting errors when [they] s[aw] them in criminal cases, especially in sentencing, because it seem[ed] both right and efficient to do so." Maddox, 708 So.2d at 621.
However, there is no doubt that the Act and our subsequent procedural rules changed the legal landscape to limit the types of unpreserved sentencing errors that may be raised on direct appeal to only those that can be deemed "fundamental." See Hyden, 715 So.2d at 962. We conclude that for those cases in which the first appellate brief was filed prior to our recent opinion in Amendments II expanding the time in which a rule 3.800(b) motion to correct a sentence could be brought, only unpreserved sentencing errors that are both patent and serious should be corrected on direct appeal as fundamental error. Accord Denson, 711 So.2d at 1226.
The first requirement for a sentencing error to be correctable on appeal continues to be that it is patent. In other words, the error must be apparent from the record. See, e.g., State v. Montague, 682 So.2d 1085, 1088 (Fla.1996); Taylor v. State, 601 So.2d 540, 541 (Fla.1992). If the appellate courts do not have a sufficient factual record to determine whether error occurred, the error cannot be corrected on direct appeal. See, e.g., Montague, 682 So.2d at 1088; Taylor, 601 So.2d at 541.
More important, however, is the second requirement: in order to be considered fundamental, an error must be serious. In determining the seriousness of an error, the inquiry must focus on the nature of the error, its qualitative effect on the sentencing process and its quantitative effect on the sentence. See Bain, 730 So.2d *100 at 304-05. In most cases, a fundamental sentencing error will be one that affects the determination of the length of the sentence such that the interests of justice will not be served if the error remains uncorrected. See Johnson, 616 So.2d at 3; see also Sochor, 619 So.2d at 290. As the Second District reasoned,
Our societal values are such that in the sentencing context we are more solicitous of personal liberty than of pecuniary interests. Thus, an error that improperly extends the defendant's incarceration or supervision likely would impress us as fundamental. But only in an extreme case would an improper cost assessment or public defender's lien qualify as fundamental error.
Bain, 730 So.2d at 305. Accordingly, we recede from Rhoden to the extent it has been interpreted as allowing correction of any sentencing error on appeal as long as the error was apparent from the face of the record. 448 So.2d at 1016.
We also reaffirm the principle that whether an unpreserved sentencing error is considered a "fundamental" error for direct appeal does not equate with whether that error constitutes an illegal sentence correctable through a rule 3.800(a) motion filed at any time, even decades after the sentence became final. In explaining the difference between unpreserved sentencing errors cognizable on direct appeal and those cognizable in the postconviction process, Judge Altenbernd observed:
"Generally, fundamental errors are those of constitutional dimension. But not all errors of constitutional dimension are fundamental." On direct appeal, there is a healthy tendency to occasionally find a constitutional "dimension" in some errors and to declare the errors "fundamental," even though they may not rise to the level of an actual deprivation of the appellant's constitutional rights. ... The mere fact that an error, especially a procedural error, is fundamental for purposes of relief on direct appeal is no guaranty that the error must be corrected on postconviction motion when it was neither preserved in the trial court nor argued on direct appeal.
Judge, 596 So.2d at 79 n. 3 (quoting Clark v. State, 336 So.2d 468, 472 (Fla. 2d DCA 1976)) (emphasis supplied) (citations omitted). Thus, not all sentencing errors considered "fundamental" on direct appeal as before the enactment of the Act would necessarily constitute an "illegal" sentence subject to correction at any time pursuant to rule 3.800(a).[8]
For example, in Summers v. State, 684 So.2d 729 (Fla.1996), we found that the unobjected-to failure of the trial court to make statutorily mandated findings before imposing adult sanctions on a juvenile did not constitute an illegal sentence subject to correction at any time, even though we had permitted that failure to be raised on direct appeal without requiring preservation. See Troutman v. State, 630 So.2d 528, 531-32 (Fla.1993); Rhoden, 448 So.2d at 1017. Although the Fifth District in Maddox relied upon Summers in concluding that this Court has recently narrowed the definition of "fundamental error" to preclude consideration of unpreserved sentencing errors, see Maddox, 708 So.2d at 619, our decision in Summers involved the very different issue of what type of sentencing error *101 could be raised for the first time in a postconviction motion to correct an illegal sentence filed pursuant to rule 3.800(a). Summers, 684 So.2d at 729. We emphasize that the fact that we consider a sentencing error a fundamental error correctable on direct appeal is no guarantee that it will be correctable at any time by a postconviction motion.
The appellate courts have been confronted with a variety of unpreserved sentencing errors and many of these cases have been accepted for review in this Court. See Appendix (chart summarizing related cases pending before this Court). These unpreserved errors range from the erroneous assessment of de minimis costs to errors that increase the actual length of the defendant's sentence. In an attempt to be predictive as well as descriptive, we review the cases pending in our Court in which we have been asked to determine whether an unpreserved sentencing error can be corrected on direct appeal in order to categorize the types of sentencing errors that constitute patent, serious sentencing errors that should be corrected during this window period as fundamental error.

A. Sentences Exceeding the Statutory Maximum

In Leonard v. State, 731 So.2d 2 (Fla. 2d DCA 1998), review granted, 719 So.2d 287 (Fla.1998) (Case No. 93,332), the defendant pleaded nolo contendere to a violation of probation and was sentenced to a term of thirty years' imprisonment when the statutory maximum for the second-degree felony was fifteen years. This type of sentencing error results in a sentence in excess of the statutory maximum, generally referred to as the prototype "illegal sentence."[9]See Bain, 730 So.2d at 305; Nelson, 719 So.2d at 1232-33; Harriel v. State, 710 So.2d 102, 104 (Fla. 4th DCA 1998).
As the First District reasoned, "The extraordinary provision made for remedying illegal sentences evidences the utmost importance of correcting such errors, even at the expense of legal principles that might preclude relief from trial court errors of less consequence." Sanders v. State, 698 So.2d 377, 378 (Fla. 1st DCA 1997); see Nelson, 719 So.2d at 1232. Thus, even where the defendant has pleaded guilty, the trial court may not impose a sentence exceeding the statutory maximum. See King v. State, 681 So.2d 1136, 1140 (Fla. 1996); Williams v. State, 500 So.2d 501, 503 (Fla.1986).
With the exception of the Fifth District, the district courts are in accord that this type of patent and serious sentencing error, which has a quantitative impact on the length of sentence served by the defendant, should be corrected on direct appeal as fundamental error. See, e.g., Bain, 730 So.2d at 305; Jordan, 728 So.2d at 750; Nelson, 719 So.2d at 1232; Harriel, 710 So.2d at 104. We agree with these courts that an unpreserved error resulting in a sentence in excess of the statutory maximum should be corrected on direct appeal as fundamental error.[10]

B. Improper Habitualization

We also accepted jurisdiction in several cases in which the defendant alleges *102 that a habitual offender sentence was imposed in violation of the statutory requirements. See Speights, 711 So.2d at 168; Edwards, 707 So.2d at 969; Jerry v. State, 732 So.2d 500 (Fla. 5th DCA), review granted, 744 So.2d 454 (Fla.1999) (Case No. 95,866); McKnight v. State, 759 So.2d 686 (Fla. 1st DCA 1998), review granted, 729 So.2d 394 (Fla.1999) (Case No. 94,256); Smith v. State, 721 So.2d 455 (Fla. 5th DCA 1998), review granted, 729 So.2d 394 (Fla.1999) (Case No. 94,703). In Speights, the First District certified the following question to be one of great public importance:
When a habitual violent felony offender sentence is imposed without record evidence of a prior conviction of an enumerated predicate felony, but without any objection by the defendant to the imposition of such a sentence, and the resulting sentence is above the statutory maximum without habitualization but below the statutory maximum period of incarceration after habitualization, is the sentencing error one that may be raised on appeal for the first time, and corrected despite the lack of any motion in the trial court to correct the sentence pursuant to Fla.R.Crim.P. 3.800(b)?
Speights, 711 So.2d at 169.
The consequences to the defendant of improper habitualization are graphically demonstrated in Speights, where the defendant's guidelines sentence was six years and two months and the statutory maximum for the offense without habitualization was fifteen years. However, because the defendant was improperly habitualized, he received a twenty-two year sentence. The First District reasoned that even though the offense of carjacking was not a statutorily-authorized predicate offense for habitualizaton, the sentence was not "illegal" because it did not exceed the statutory maximum for the offense after habitualization. See id. After the First District's decision, the State conceded error during oral argument in Speights v. State, and pursuant to that concession, we ordered the trial court to correct the sentence immediately. See Speights v. State, 749 So.2d 503 (Fla.1999). This is similar to the error in Smith where the defendant claims that his prior felony convictions were an insufficient predicate for habitualization because two of the convictions were entered on the same day and the third occurred after the date of the offense. 721 So.2d at 455.
Further, without expressly receding from Speights, the First District in McKnight in fact corrected a similar error of improper habitualization "because habitual offender sentencing is expressly prohibited for possession of cocaine, and the sentence exceeds the maximum permissible non-habitual offender statute for that offense." 759 So.2d at 686; see Gregory v. State, 739 So.2d 100 (Fla. 2d DCA 1999) (correcting the same type of unpreserved error although defendant pleaded guilty, because it is serious and patent); Denson, 711 So.2d at 1230 (same); see also Nelson, 719 So.2d at 1232-33 (correcting habitual offender sentence for felony petit theft, which is expressly prohibited by statute). This is the same type of error at issue in Edwards, where the Fifth District issued a per curiam opinion affirming the imposition of a habitual offender sentence for the possession of cocaine, although this sentence is specifically prohibited by statute. 707 So.2d at 969.
Because we find that improper habitualization of the defendant contrary to specific statutory requirements is a patent, serious error that has a quantifiable effect on the length of the defendant's incarceration, we find that this type of error should be corrected on direct appeal as fundamental. For these reasons we approve the First District's opinions in McKnight and Nelson and the Second District's opinion in Denson on this issue. Accordingly, we answer the certified question in Speights in the affirmative and, as we did by previous order in Speights, quash the district court's opinion in Edwards. We also disapprove *103 the district court's decisions in Smith and Jerry.

C. Impact on Length of Incarceration

We have pending for our review the district courts' decisions in Seccia v. State, 720 So.2d 580 (Fla. 1st DCA 1998), review granted, 727 So.2d 910 (Fla.1999) (Case No. 94,138), and Latiif v. State, 711 So.2d 241 (Fla. 5th DCA 1998), review granted, 725 So.2d 1108 (Fla.1998) (Case No. 93,385), in which the defendants claim that the trial court erred in sentencing them pursuant to an erroneous sentencing scoresheet.
We have previously required that defendants contemporaneously object to alleged sentencing errors in the scoresheet if the error is based upon disputed factual matters. See Montague, 682 So.2d at 1085; Dailey v. State, 488 So.2d 532, 534 (Fla. 1986). Even in those cases involving scoresheet errors apparent from the record, we have previously held that "it does not necessarily follow that all cases involving scoresheet errors must be automatically reversed for resentencing." State v. Mackey, 719 So.2d 284, 284 (Fla.1998). However it "is undoubtedly important for the trial court to have the benefit of a properly calculated scoresheet when making a sentencing decision." Id. Thus, in assessing whether a scoresheet error that appears on the face of the record constitutes fundamental error, the appellate courts should consider the qualitative effect of the error on the sentencing process and whether the error was likely to cause a quantitative effect on the defendant's sentence. If this cannot be determined readily on appeal, the scoresheet errors are more appropriately addressed in the trial court. On appeal to this Court, the parties have not adequately briefed the merits of the actual alleged sentencing errors in Seccia and Latiif. Accordingly, by separate opinions we will remand these cases to the district courts for proceedings consistent with this opinion.
We further note that district courts have addressed sentencing errors that could significantly impact a defendant's length of incarceration. Although the Fourth District first stated in Hyden, 715 So.2d at 963 n. 1, that the only unpreserved errors it would correct were sentences in excess of the statutory maximum, in a subsequent opinion the Fourth District found the erroneous imposition of a minimum mandatory sentence to constitute fundamental error "because of its inherent potential of causing or requiring `a defendant to be incarcerated... for a greater length of time than provided by law in the absence of ... [a] sentencing error.'" Powell v. State, 719 So.2d 963, 964 (Fla. 4th DCA 1998) (quoting Porter v. State, 702 So.2d 257 (Fla. 4th DCA 1997)) (alterations in original). Correction of these errors that are patent and serious, and therefore fundamental, at their earliest opportunity comports with the interests of both the State and the defendant in not forcing an individual defendant to serve a sentence longer than authorized by law. However, we do not recede from our prior case law allowing defendants to agree through a plea bargain to a sentence not specifically authorized by statute or rule as long as the sentence does not exceed the statutory maximum. See, e.g., King, 681 So.2d at 1140; Quarterman v. State, 527 So.2d 1380, 1382 (Fla.1988); Williams, 500 So.2d at 503.

D. Deviation from Oral Pronouncement of Sentence: Increased Length of Incarceration

In a number of cases pending on review, the defendant claims that the written sentence is in error because it conflicts with the trial court's oral pronouncement of sentence at the sentencing hearing. See Greenwood v. State, 720 So.2d 548 (Fla. 4th DCA), review granted, 727 So.2d 905 (Fla.1998) (Case No. 94,142); Thomas v. State, 725 So.2d 1148 (Fla. 2d DCA 1998), review granted, 729 So.2d 396 (Fla.1999) (Case No. 94,469). Prior to the Act, this type of error was corrected on appeal despite lack of preservation because the error implicated due process concerns that a *104 defendant have notice and an opportunity to object, as well as a judicial policy that the oral imposition of sanctions should control over later contrary written orders. See State v. Williams, 712 So.2d 762, 762-64 (Fla.1998) (correcting error without mentioning preservation requirement); Justice v. State, 674 So.2d 123, 125 (Fla. 1996) (same).
We conclude that serious errors resulting from deviations in the written sentence from the oral pronouncement should continue to be corrected on appeal during this window period where the sentencing error has a qualitative effect on the integrity of the sentencing process or when it has a quantitative effect on the length of the sentence. We agree with the Second District in Denson that a deviation from an oral pronouncement that results in an increased term of incarceration is a patent, serious sentencing error that should be corrected on appeal as fundamental during this window period. 711 So.2d at 1230; see also Johnson v. State, 701 So.2d 382 (Fla. 1st DCA 1997) (correcting a deviation from the oral pronouncement of sentence resulting in the written judgment convicting the defendants of additional counts of resisting arrest). We find that these considerations mandating correction continue to be present, even in those cases where the defendant pleaded guilty. See Lemar v. State, 751 So.2d 603 (Fla. 2d DCA 1999) (correcting imposition of three-year mandatory term that the State conceded did not conform to the oral pronouncement even though the defendant pleaded guilty).
We thus disapprove the opinion in Greenwood, in which the State concedes that a deviation from the oral pronouncement resulted in a written sentence that failed to give the defendant credit for six-months' of jail time. The failure to award jail credit for time previously served is a fundamental sentencing error that should be corrected during the window period even though unpreserved. See State v. Mancino, 714 So.2d 429, 432 (Fla.1998).
Similarly, we conclude that in these cases the appellate courts should correct errors such as those that occurred in Peavy v. State, 706 So.2d 943, 944 (Fla. 1st DCA 1998), where a written judgment "seemingly adjudicates defendant guilty of offenses unsupported by the evidence presented at trial and of which the jury did not find him guilty" due to an apparent error in the written judgment. This type of error clearly affects the integrity of the sentencing process. However, we approve Thomas v. State, 725 So.2d 1148 (Fla. 2d DCA 1998), review granted, 729 So.2d 396 (Fla.1999) (Case No. 94,469), where the appellate court declined to correct a "scrivener's error" in the trial court's order revoking probation, even though the written order was at variance with the oral pronouncement, where the error had no effect on the sentence imposed. 725 So.2d at 1149.

E. Deviation from Oral Pronouncement of Condition of Probation

The next category of sentencing errors we have for review are those involving conditions of probation. In Hyden, the Fourth District concluded that it would not correct an unpreserved error arising when the trial court failed to orally announce conditions of probation at the sentencing hearing that were subsequently imposed in the written sentencing order. 715 So.2d at 961. This is in accord with the conclusion of the Second District that the deviations from the oral pronouncement of conditions of probation should not be corrected on appeal. See Denson, 711 So.2d at 1230 n. 13 (correcting error in the written sentence's failure to conform to the oral pronouncement resulting in extra years of incarceration, but stating that errors in imposing conditions of probation do not constitute serious, patent sentencing errors); Mason v. State, 698 So.2d 914, 915 (Fla. 4th DCA 1997) (finding an appeal of an unpreserved error in the failure of the written order imposing conditions of probation to conform to the oral pronouncement *105 is "just the type of appeal that should be eliminated" by the Act).
Prior to the Act, we differentiated between "general conditions of probation" and "special conditions of probation." See Williams, 712 So.2d at 764; Justice, 674 So.2d at 125. We found that defendants are given constructive notice of the imposition of general conditions of probation that are mandated or authorized by statute. See State v. Hart, 668 So.2d 589, 592 (Fla. 1996); see also Brock v. State, 688 So.2d 909, 910 n. 1 (Fla.1997). Likewise, defendants are given constructive notice of the general conditions of probation published in conditions (1)-(11) of the standard probation form found in Florida Rule of Criminal Procedure Rule 3.986(e). See Hart, 668 So.2d at 592. Thus, general conditions of probation do not have to be orally pronounced at the sentencing hearing and due process is satisfied as long as the conditions are included in the written sentencing order. See id. at 592-93.
However, we distinguished special conditions of probation, which are not statutorily authorized or mandated or found among the first eleven general conditions of probation listed in the rules of criminal procedure. See Williams, 712 So.2d at 764; Hart, 668 So.2d at 593. We found that if the defendant had not been given notice of the imposition of these sanctions during the oral pronouncement of sentence, the special condition of probation must be struck and could not be reimposed on remand. See Justice, 674 So.2d at 125.
Because we allowed courts to impose general conditions of probation that have not been orally pronounced, it is clear that our primary concern in correcting unannounced special conditions of probation is the due process violation occurring when a person does not have notice and an opportunity to object to the condition of probation. However, following our promulgation of rule 3.800(b), defendants have been given a procedural mechanism to object to the imposition of special conditions of probation that have not been orally pronounced. This procedural mechanism satisfies due process concerns because the defendant has an opportunity to object following the imposition of the special condition of probation.
In a somewhat related context, we found that absent a contemporaneous objection, a defendant could challenge a condition of probation as being overly burdensome "only if it is so egregious as to be the equivalent of fundamental error." Larson, 572 So.2d at 1371. The defendant in Larson entered a voluntary plea agreement in which he agreed to a special condition of probation that he would not travel to Tallahassee for five years. Although we reasoned that "a condition of probation that burdens the exercise of a legal or constitutional right should be given special scrutiny," we found that this condition of probation did not constitute fundamental error. Id.[11]
Further, we do not find that the deviation from the oral pronouncement of the conditions of probation imposed in Hyden is an error, let alone fundamental error. See Brock, 688 So.2d at 910-12. In Hyden, the defendant alleges that the trial court deviated from the oral pronouncement of the condition of probation that required the defendant to submit to "random urinalysis, breath and blood testing."[12]Hyden, 715 So.2d at 961. We *106 addressed the same condition of probation in Brock and found that because the condition is statutorily authorized, it does not have to be orally announced at the sentencing hearing. Brock, 688 So.2d at 910-12 & n. 1; see § 948.03(1)(k)1., Florida Statutes (Supp.1996); Torres v. State, 712 So.2d 1169, 1170 (Fla. 2d DCA 1998).
We thus find that considering the nature of the claimed error, the absence of any qualitative effect on the sentencing process, and the absence of any quantitative effect on the sentence, the imposition of the condition of probation that was not orally announced in Hyden does not constitute a fundamental sentencing error that should be considered on direct appeal. We also note that in none of our pending cases has the appellant made a claim that he or she did not have notice of the deviation from oral pronouncement of the conditions of probation in time to file a rule 3.800(b) motion.[13]
Accordingly, we approve the district court's opinion in Hyden to the extent that it is consistent with this opinion.

F. Departure Sentences

A number of defendants in cases we have accepted for review have alleged that their sentences were erroneously imposed because the trial court did not comply with statutory and procedural requirements to orally announce the reasons for departure during the sentencing hearing and to file written reasons for imposing a departure sentence within seven days after sentencing. See Butler v. State, 723 So.2d 865 (Fla. 1st DCA 1998), review granted, 735 So.2d 1283 (Fla.1999) (Case No. 94,614); Weiss v. State, 720 So.2d 1113, 1115 (Fla. 3d DCA 1998), review granted, 729 So.2d 396 (Fla.1999) (Case No. 94,460); Johnson v. State, 717 So.2d 1057 (Fla. 1st DCA 1998), review granted, 727 So.2d 906 (Fla.1998) (Case. No. 93,915); Jordan v. State, 728 So.2d 748 (Fla. 3d DCA 1998), review granted, 735 So.2d 1285 (Fla.1999) (Case No. 95,325).
The sentencing statutes provide that the "recommended guidelines sentence" is "assumed to be appropriate for the offender." § 921.0016(1)(a), Fla. Stat. (Supp.1996). The Legislature codified the sentencing guidelines in order to provide "a uniform set of standards to guide the sentencing judge in the sentence decision making process" and to "eliminate unwarranted variation in the sentencing process by reducing the subjectivity" in evaluating sentencing criteria. § 921.001(4), Fla. Stat. (1995); see also Fla. R.Crim. P. 3.701(b). To accomplish these goals, the statute mandates that if a trial judge decides to impose a sentence that departs from the guidelines by more than twenty-five percent, the written sentence
must be accompanied by a written statement delineating the reasons for the departure, filed within 7 days after the date of sentencing. A written transcription of orally stated reasons for departure from the guidelines at sentencing is permissible if it is filed by the court within 7 days after the date of sentencing.
§ 921.0016(1)(c), Fla. Stat. (Supp.1996). Likewise, this Court's procedural rules require that the trial court file written reasons justifying the imposition of a departure sentence. See Fla. R.Crim. P. 3.701(d)(11).[14]
*107 Commencing with Pope v. State, 561 So.2d 554 (Fla.1990), we have consistently mandated that noncompliance with the statute and rules governing departure sentences should be addressed on direct appeal, even absent a contemporaneous objection. In Ree v. State, 565 So.2d 1329, 1332 (Fla.1990), this Court explained that strict adherence to the requirement of a written order was required because a "departure sentence is an extraordinary punishment that requires serious and thoughtful attention by the trial court." We have also explained that written reasons for departure are statutorily required to enhance the uniformity of sentences. See Davis v. State, 661 So.2d 1193, 1196 (Fla.1995); Smith v. State, 598 So.2d 1063, 1067 (Fla. 1992); State v. Jackson, 478 So.2d 1054, 1056 (Fla.1985). Further, we recognized that requiring written reasons for departure allows effective appellate review of the trial court's decision to depart. See, e.g., Jackson, 478 So.2d at 1056. In fact, we considered the correction of this type of sentencing error so important to the sentencing decision that the failure to timely file written reasons for departure resulted in the appellate court remanding for the imposition of a guidelines sentence. See Pope, 561 So.2d at 554.
In the departure context, however, this Court distinguished between departure sentences following a trial and those based on a negotiated plea. A valid plea agreement constitutes clear and convincing grounds for the trial judge to impose a departure sentence. See State v. Williams, 667 So.2d 191, 193-94 (Fla. 1996); Quarterman, 527 So.2d at 1382; see also §§ 921.0016(3)(a), (4)(a) (Supp.1996). We reasoned in Williams that "while it would be better form for a trial court to state in writing that the plea agreement is the reason for departure, the failure to do so does not invalidate a departure sentence imposed pursuant to a valid plea agreement." 667 So.2d at 194.
We conclude that for defendants who did not agree to the imposition of a departure sentence in a plea agreement, the policy reasons for correcting a departure sentence in which the trial court failed to file statutorily required written reasons for departure are still applicable following the Act. We conclude that this statutory omission is an important one that affects the integrity of the sentencing process concerning the critical question of the length of the sentence. For example, in Butler, the appellant's guideline sentence was two-and-one-half to five-and-one-half years, whereas the trial court imposed a fifteen-year sentence and did not file any written reasons for imposing the departure sentence. Thus, we disapprove the First District's opinion in Butler, where the First District held that the defendant could not raise the unpreserved error.[15] However, we do not recede from our opinion in Davis that precluded consideration of this *108 type of error under 3.800(a) as an illegal sentence to be considered at any time.
We next consider whether the failure to file written reasons in a timely manner also constitutes a serious, patent sentencing error that can be corrected as fundamental error. We recognize that prior to the Act, we found that the failure to file any written reasons for departure and the failure to timely file written reasons for departure were "closely related." Davis, 661 So.2d at 1196; see State v. Colbert, 660 So.2d 701, 702 (Fla.1995) (reversing departure sentence where trial judge orally announced written reasons for departure but did not file written reasons for five business days); Ree v. State, 565 So.2d 1329, 1331 (Fla.1990) (reversing where written reasons for departure were filed five days after sentencing). Formerly, the departure statute required that reasons for departure be filed the same day as the written sentence. See, e.g., Ree, 565 So.2d at 1331. However, if the trial court orally announced the reasons for departure and entered the written reasons for imposing the departure sentence on the same day as the sentencing hearing, the departure sentence did not have to be reversed if the written reasons for departure were filed the following day. See State v. Lyles, 576 So.2d 706, 708-09 (Fla. 1991).
In contrast to the statute construed in our earlier departure cases, the 1996 statute only requires that written reasons for departure be filed within seven days following sentencing. See § 921.0016(1)(c). Further, rule 3.800(b) gave defendants thirty days in which to challenge a departure sentence based on invalid reasons. In our opinion, while there is a qualitative effect on the integrity of the sentencing process when the trial court fails to file any written reasons for imposing a departure sentence, this same concern is not present when the written reasons are filed late but within sufficient time for the defendant to file a motion to correct the sentence on this basis. See Weiss, 720 So.2d at 1114 (finding that even if the trial court had filed the written reasons for departure three days late, the defendant had not been prejudiced thereby); Jordan, 728 So.2d at 753 (finding the defendant had not been prejudiced when the written reasons for departure were filed twenty-two days late but the defendant was able to attack the court's reasons for imposing the departure sentence on appeal). We agree that when written reasons for imposing a departure sentence were filed late, this late filing does not constitute a fundamental sentencing error if the defendant was not hindered in his or her efforts to challenge the grounds for imposing the departure sentence on direct appeal. See Weiss, 720 So.2d at 1115; Jordan, 728 So.2d at 753.
In Johnson, the trial court did not orally announce reasons for imposing a departure sentence during the sentencing hearing as required by rule 3.702(d)(18)(A), but filed written reasons for departure within the seven days allowed by statute. 717 So.2d at 1065. We find this error analogous to a late filing of written reasons for departure and do not consider this to be a fundamental sentencing error that has a qualitative effect on the integrity of the sentencing process. Accordingly, we approve the district courts' opinions on this issue in Weiss, Johnson, and Jordan.

G. Improper Assessment of Costs

We next address the largest single category of unpreserved sentencing errors that have inundated the appellate courtsunpreserved errors in assessment of costs. Along with a great number of other cases pending before us,[16] the sentencing errors at issue in both Maddox and Hyden involve the improper imposition of costs.[17] These errors were not *109 preserved for appellate review by either a contemporaneous objection or the filing of a motion to correct the sentence pursuant to rule 3.800(b). In contrast to those serious, patent sentencing errors that should be corrected on direct appeal as fundamental, we find that unpreserved errors in the assessment of costs do not warrant the attention of the appellate courts. As pointed out by Judge Warner in the Fourth District's en banc opinion in Hyden, judicial efficiency is sacrificed when a defendant utilizes "all of the resources of the appellate systema brief filed by a public defender, the services of the clerk and court, and the review of the case by three judgesin order to correct such mistakes which frequently involve nominal sums." 715 So.2d at 962.
Prior to the Act, this Court considered the imposition of discretionary costs without notice and an opportunity to object to be fundamental error because it violated due process. See Wood, 544 So.2d at 1006; Henriquez v. State, 545 So.2d 1340, 1341 (Fla.1989). The district courts appear to be in accord, however, that unpreserved issues relating to any imposition of costs or public defender's liens should no longer be considered correctable on appeal. See, e.g., Maddox, 708 So.2d at 620; Locke v. State, 719 So.2d 1249 (Fla. 1st DCA 1998), review granted, No. 94,396, 760 So.2d 947 (Fla. Feb. 18, 1999); Hyden, 715 So.2d at 962; Denson, 711 So.2d at 1230 n. 13.
Even before the Act, we found that if a statute or rule mandates the imposition of costs, no error occurs when the costs are imposed without actual notice and an opportunity to object. See State v. Beasley, 580 So.2d 139, 142 (Fla.1991). This is because the defendant receives constructive notice of the costs through the publication of the statute or rule and due process is satisfied as long as the defendant has an opportunity to object at the sentencing hearing. See id. Presently, rule 3.800(b) provides defendants with an opportunity to contest the erroneous imposition of costs after receiving notice of the costs in the written judgment. As observed by Judge Warner:
The addition of Rule 3.800(b) and Rule 9.140(d) has changed the legal landscape with respect to whether it remains fundamental error to impose a public defender's fee or costs where the defendant failed to move to correct the sentence or order of probation. Wood explains that without adequate notice and a meaningful hearing, the requirements of due process are not met in imposing costs upon a defendant who may be indigent. See 544 So.2d at 1006. Assuming that prior to the sentence a defendant is not given notice of the state's intent to impose costs and a public defenders' fee, once the fees are imposed in the sentence, the defendant surely has notice of them. If the defendant contests either the ability to pay such fees or the amount, he or she can file a motion to correct the sentence, pursuant to Rule 3.800(b), contesting the imposition and requesting a hearing. This gives the defendant, the trial court, and the state an expeditious manner for correcting the problem by holding a hearing on the matter.
Hyden, 715 So.2d at 962.
The improper assessment of six dollars in costs in Maddox, 708 So.2d at 618, is "trivial." Even though this assessment is without statutory foundation, it does not have a quantitative effect on the length of the sentence the defendant in Maddox is required to serve nor does it have a qualitative effect on the sentencing process. We conclude that an unpreserved error in the assessment of costs cannot be considered a serious, patent sentencing error that should be corrected on appeal as fundamental in the absence of proper preservation in the trial court. Accord Bain, 730 So.2d at 305; Gaines v. State, 724 So.2d 139, 140 (Fla. 2d DCA 1998) (holding that *110 improper imposition of public defender lien is neither fundamental nor serious, patent sentencing error).
As with the pending cases in which the defendant asserts error because of a deviation from the oral pronouncement imposing conditions of probation, in none of the pending cases where the defendant asserts an improper error in the imposition of a cost has the appellant made a claim that the appellate record establishes that he or she did not have notice of the imposition of the costs in time to file a rule 3.800(b) motion.
We thus approve of the district courts' opinions in Maddox and Hyden to the extent that they recognize that unpreserved errors in the assessment of costs do not constitute fundamental error that are correctable on direct appeal. However, we disapprove the dicta in both cases that is inconsistent with the definition of fundamental sentencing error set forth in this opinion.[18]

CONCLUSION
It is the duty of this Court to ensure the fair and efficient administration of the criminal justice system. We have recognized in Amendments II that the procedural rules we previously promulgated did not provide a failsafe mechanism to correct and preserve sentencing errors in the trial court. Neither the interests of justice nor judicial economy will be served by preventing the appellate courts from correcting as fundamental error those serious, patent sentencing errors that have been brought to the courts' attention through the issues raised on appeal. Thus, during the window period between the enactment of the Criminal Appeal Reform Act and this Court's recent opinion in Amendments II, the appellate courts should correct as fundamental error those serious, patent sentencing errors that fit into the types of categories and descriptions set forth in this opinion.
It is so ordered.
SHAW, ANSTEAD, LEWIS and QUINCE, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which HARDING, C.J., concurs.
 APPENDIX
Adside v. State, 722 So.2d 228 (Fla. 5th Costs Error
DCA 1998), review granted, 729 So.2d 389
(Fla.1999) (Case No. 94,752)
Burch v. State, 724 So.2d 718 (Fla. 1st Costs Error
DCA), review granted, 732 So.2d 325 (Fla.
1999) (Case No. 94,956)
Butler v. State, 723 So.2d 865 (Fla. 1st DCA Departure Sentence
1998), review granted, 735 So.2d 1283 (Fla.
1999) (Case No. 94,614)
*111
Charles v. State, 751 So.2d 63 (Fla. 5th Award of Time Served and Gain Time
DCA), review granted, 740 So.2d 527 (Fla.
1999) (Case No. 95,753)
Collins v. State, 732 So.2d 1149 (Fla. 1st Departure Sentence
DCA 1999), review granted, 744 So.2d 453
(Fla.1999) (Case No. 95,869)
Dodson v. State, 710 So.2d 159 (Fla. 1st Costs Error
DCA), review granted, 725 So.2d 1110 (Fla.
1998) (Case No. 93,077)
Edwards v. State, 707 So.2d 969 (Fla. 5th Habitual Offender Sentence
DCA), review granted, 718 So.2d 167 (Fla.
1998) (Case No. 93,000)
Engeseth v. State, 725 So.2d 428 (Fla. 1st Costs Error
DCA), review granted, 732 So.2d 326 (Fla.
1999) (Case No. 95,003)
Fitzgerald v. State, 708 So.2d 690 (Fla. 5th Department Sentence
DCA), review granted, 718 So.2d 167 (Fla.
1998) (Case No. 93,097)
Greenwood v. State, 720 So.2d 548 (Fla. 4th Deviation from Oral Pronouncement
DCA), review granted, 727 So.2d 905 (Fla.
1998) (Case No. 94,142)
Heird v. State, 734 So.2d 1059 (Fla. 1st Costs Error
DCA 1998), review granted, 727 So.2d 906
(Fla.1999) (Case No. 94,348)
Hodge v. State, 718 So.2d 832 (Fla. 4th DCA Costs Error
1998), review granted, 729 So.2d 391 (Fla.
1999) (Case No. 94,180)
Hope v. State, 736 So.2d 1256 (Fla. 4th Scoresheet Error
1999), review granted, 744 So.2d 454 (Fla.
1999) (Case No. 96,352)
Hyden v. State, 715 So.2d 960 (Fla. 4th Deviation from Oral Pronouncement of Conditions
DCA), review granted, 728 So.2d 203 (Fla. of Probation and Costs Error
1999) (Case No. 93,966)
Jerry v. State, 715 So.2d 1141 (Fla. 5th No sentencing error alleged
DCA), review granted, 728 So.2d 202 (Fla.
1998) (Case No. 93,828)
Jerry v. State, 732 So.2d 500 (Fla. 5th Habitual Offender Sentence
DCA), review granted, 744 So.2d 454 (Fla.
1999)
Jervis v. State, 727 So.2d 981 (Fla. 5th Scoresheet Error
DCA), review granted, 732 So.2d 327 (Fla.
1999) (Case No. 94,933)
Johnson v. State, 717 So.2d 1057 (Fla. 1st Departure Sentence
DCA), review granted, 727 So.2d 906 (Fla.
1998) (Case. No. 93,915)
Johnson v. State, 24 Fla. L. Weekly D1192, Costs Error
___ So.2d ___, 1999 WL 303402 (Fla. 1st
DCA May 14, 1999), review granted, 751
So.2d 1252 (Fla.2000)
Jordan v. State, 728 So.2d 748 (Fla. 3d DCA Departure Sentence
1998), review granted, 735 So.2d 1285 (Fla.
1999) (Case No. 95,325)
Kenon v. State, 724 So.2d 716 (Fla. 5th Scoresheet Error
DCA 1999), review granted, 744 So.2d 454
(Fla.1999) (Case No. 94,991)
*112
Klarich v. State, 730 So.2d 419 (Fla. 5th Costs Error and Deviation from Oral Pronouncement
DCA),
review granted, 740 So.2d 528 (Fla. of Conditions of Probation
1999) (Case No. 95,705)
Latiif v. State, 711 So.2d 241 (Fla. 5th Scoresheet Error
DCA), review granted, 725 So.2d 1108 (Fla.
1998) (Case No. 93,385)
Leonard v. State, 731 So.2d 2 (Fla. 2d Sentence Exceeding the Statutory
DCA), review granted, 719 So.2d 287 (Fla. Maximum
1998) (Case No. 93,332)
Lewis v. State, 720 So.2d 269 (Fla. 5th DCA Sentence Exceeding the Statutory
1998), review granted, 727 So.2d 907 (Fla. Maximum
1999) (Case No. 94,381)
Locke v. State, 719 So.2d 1249 (Fla. 1st Costs Error
DCA 1998), review granted, No. 94,396, 760
So.2d 947 (Fla. Feb. 18, 1999)
Maddox v. State, 708 So.2d 617 (Fla. 5th Costs Error
DCA 1998), review granted, 718 So.2d 169
(Fla.1998) and review granted, 728 So.2d
203 (Fla.1999) (Case No. 92,805)
Matke v. State, 23 Fla. L. Weekly D469, ___ Costs Error
So.2d___, 1998 WL 55968 (Fla. 1st DCA
Feb. 13, 1998), review granted, No. 92,476,
762 So.2d 918 (Fla. May 19, 1998) (Case No.
92,476)
McCray v. State, 24 Fla. L. Weekly D75, Costs Error
___ So.2d ___, 1998 WL 895452 (Fla. 1st
DCA Dec.28, 1998), review granted, 729
So.2d 918 (Fla.1998) (Case No. 96,640)
McKnight v. State, 759 So.2d 686 (Fla. 1st Habitual Offender Sentence
DCA 1998), review granted, 729 So.2d 394
(Fla.1999) (Case No. 94,256)
McLean v. State, 732 So.2d 1211 (Fla. 1st Costs Error
DCA 1999), review granted, 744 So.2d 455
(Fla.1999) (Case No. 95,949)
Mike v. State, 708 So.2d 1042 (Fla. 1st Costs Error
DCA), review granted, 719 So.2d 893 (Fla.
1998) (Case No. 93,163)
Parks v. State, 719 So.2d 1212 (Fla. 5th Sentence Exceeding Statutory Maximum
DCA 1998), review granted, 727 So.2d 909
(Fla.1999) (Case No. 94,286)
Perry v. State, 744 So.2d 1199, 1200 (Fla. Departure Sentence
5th DCA 1999), review granted, No 97,119,
761 So.2d 330 (Fla. Feb. 21, 2000)
Rider v. State, 724 So.2d 617 (Fla. 5th DCA Deviation from Oral Pronouncement
1998), review granted, 735 So.2d 1287 (Fla.
1999) (Case No. 95,060)
Sassnett v. State, 724 So.2d 174 (Fla. 1st Costs Error
DCA 1998), review granted, 741 So.2d 1137
(Fla.1999) (Case No. 94,812)
Seccia v. State, 720 So.2d 580 (Fla. 1st DCA Scoresheet Error
1998), review granted, 727 So.2d 910 (Fla.
1999) (Case No. 94,138)
Smith v. State, 721 So.2d 455 (Fla. 5th DCA Habitual Offender Sentence
1998), review granted, 729 So.2d 394 (Fla.
1999) (Case No. 94,703)
*113
Speights v. State, 711 So.2d 167 (Fla. 1st Habitual Offender Sentence
DCA 1998), review granted, 728 So.2d 204
(Fla.1998), quashed and remanded, 749
So.2d 503 (Fla.1999) (Case No. 93,207)
Spencer v. State, 712 So.2d 446 (Fla. 5th Simultaneous Incarceration and Probation
DCA), review granted, 727 So.2d 911 (Fla.
1998) (Case No. 93,430)
Stuart v. State; No. 98-02900 (Fla. 2d DCA Sentence Exceeding Statutory Maximum
June 2, 1999), review granted, 744 So.2d 457
(Fla.1999) (Case No. 96,208)
Taylor v. State, 739 So.2d 1277 (Fla. 5th Sentence Exceeding Statutory Maximum
DCA), review granted, 749 So.2d 504 (Fla.
1999) (Case No. 96,671)
Terry v. State, 727 So.2d 1124 (Fla. 5th Sentence Exceeding Statutory Maximum
DCA), review granted, 735 So.2d 1287 (Fla.
1999) (Case No. 95,149)
Thogode v. State, 731 So.2d 114 (Fla. 5th Departure Sentence
DCA), review granted, 740 So.2d 529 (Fla.
1999) (Case No. 95,665)
Thomas v. State, 725 So.2d 1148 (Fla. 2d Deviation From Oral Pronouncement
DCA 1998), review granted, 729 So.2d 396
(Fla.1999) (Case No. 94,469)
Tibbs v. State, 745 So.2d 1144 (Fla. 1st DCA Costs Error and Deviation From Oral Pronouncement
1999), review granted, No. SCOO-10, 761 of Conditions of Probation
So.2d 332 (Fla. Mar. 20, 2000)
Weiss v. State, 720 So.2d 1113 (Fla. 3d DCA Departure Sentence
1998), review granted, 729 So.2d 396 (Fla.
1999) (Case No. 94,460)
Wise v. State, 739 So.2d 1280 (Fla. 5th DCA Sentence Exceeding Statutory Maximum
1999), review granted, 751 So.2d 1255 (Fla. and Deviation From Oral Pronouncement of
2000) (Case No. 96,760) Conditions of Probation
Wright v. State, 720 So.2d 313 (Fla. 1st Costs Error
DCA 1998), review granted, 732 So.2d 330
(Fla.1999) (Case No. 94,541)
JURISDICTIONAL VOTE PENDING
Edmondson v. State, 745 So.2d 533 (Fla. 1st Departure Sentence
DCA 1999) (Case No.1999-101)
WELLS, J., concurring in part and dissenting in part.
I certainly respect and appreciate the hard work of Justice Pariente in this labyrinth of cases. In concur in the result obtained in all cases except Butler v. State, 723 So.2d 865 (Fla. 1st DCA 1998). In Butler, I find the district court's conclusion that Butler was "not prejudiced" by the error undermines this Court's determination that the error was fundamental.
I write further for two reasons. First, to acknowledge that I believe Judge Joanos's opinion in Nelson v. State, 719 So.2d 1230 (Fla. 1st DCA 1998), Judge Altenbernd's opinion in Bain v. State, 730 So.2d 296 (Fla. 2d DCA 1999), and Judge Griffin's opinion in Maddox v. State, 708 So.2d 617 (Fla. 5th DCA 1998), were quite correct in their analysis of what this Court did in adopting the amendments to Florida Rule of Appellate Procedure 9.140(d) and Florida Rule of Criminal Procedure 3.800(b) in 1996. I agree that this Court clearly indicated in Amendments to Florida Rule of Appellate Procedure 9.020(g) & Florida Rule of Criminal Procedure 3.800, 675 So.2d 1374 (Fla.1996), that it was the Court's intent to honor the Legislature's initiative that sentencing errors be preserved in the trial court as a condition of appeal. I now concur to the present majority opinion because I conclude that the *114 amendments we adopted in 1996 were not sufficient to assure the proper administration of justice in these cases. I am now hopeful that the most recent amendments by the Judge Altenbernd-chaired Criminal Appeals Reform Act Committee will be sufficient, and now all errors will first be presented to the trial court. It is my view that rule 9.140(d) must be given its full, plain meaning and effect, beginning with the cases which are covered by this latest amendment.
Second, I believe the result in these cases is dictated by the necessity of orderly process. I am concerned that if all these cases are forced into postconviction that there will be an overwhelmingly adverse impact on the trial courts and, more importantly, that justice in some of these cases will never be served.
Finally, though, I must state that I am concerned about the nebulous definition of fundamental error as being "patent and serious." "Serious" is, of course, a relative value judgment, and I believe it will be very difficult to apply. However, I resolve this concern for now with a recognition that this is an evolving definition for a limited period of time. The definition perhaps can be refined as it is applied.
HARDING, C.J., concurs.
NOTES
[1] We have jurisdiction over the district court's decision in Maddox on the basis of direct and express conflict. See art. V, § (3)(b)3, Fla. Const.
[2] Different provisions of the Florida Constitution grant our authority to review each of these decisions. We have jurisdiction over the decision in Hyden because the district court certified conflict with Neal v. State, 688 So.2d 392 (Fla. 1st DCA 1997). See art. V, § 3(b)(4), Fla. Const.; Hyden, 715 So.2d at 963. In Edwards, 707 So.2d at 969, the Fifth District issued a per curiam affirmance that cited Maddox as controlling authority. Because Maddox is pending before this Court, we also have jurisdiction over Edwards on the basis of direct and express conflict. See art. V, § 3(b)(3); Jollie v. State, 405 So.2d 418, 420 (Fla.1981). Finally, we have jurisdiction over the decision in Speights pursuant to article V, section 3(b)(4) of the Florida Constitution because the district court passed upon a question it certified to be as one of great public importance. In addition to these cases, we have accepted jurisdiction in approximately 50 decisions that are related to Maddox. See Appendix (chart summarizing related cases pending before this Court). Many of these cases are per curiam affirmances issued without an opinion but with a citation to Maddox. We have accepted jurisdiction of these cases in accordance with Jollie, 405 So.2d at 420.
[3] In our opinion on rehearing in Amendments II, we clarified that rule 3.800(b) was not intended to apply to capital defendants. 761 So.2d at 1025.
[4] In this opinion we address only the question of whether unpreserved sentencing errors should be corrected in those noncapital criminal appeals filed in the window period between the effective date of the Act and the effective date of our recent amendment to rule 3.800(b) in Amendments II.
[5] In Robinson, this Court stated that four types of errors could be raised on appeal if the defendant pleaded guilty: (1) lack of subject matter jurisdiction; (2) illegality of the sentence; (3) failure of the government to abide by a plea agreement; and (4) the voluntary and intelligent character of the plea. 373 So.2d at 902.
[6] The Court in Robinson stated that defendants who pleaded guilty could raise an "illegal" sentence on appeal. 373 So.2d at 902-03. However, judging by the types of unpreserved sentencing errors we corrected thereafter as in Wood v. State, 544 So.2d 1004 (Fla.1989), and Troutman v. State, 630 So.2d 528 (Fla.1993), it is likely that when this Court decided Robinson in 1979 the term "illegality of the sentence" had a broader meaning than this Court's later definition of that term found in Davis v. State, 661 So.2d 1193, 1196 (Fla.1995), and in State v. Mancino, 714 So.2d 429, 433 (Fla.1998). See Maddox, 708 So.2d at 618 n. 4; see also Brown v. State, 633 So.2d 112, 114 (Fla. 2d DCA 1994) (Altenbernd, J., concurring in part and dissenting in part). As Judge Altenbernd noted, in the 1960s and 1970s "the notion that a sentence could be `unlawful' or `erroneous' or `imposed in violation' of the law without also being `illegal' would probably have seemed odd to most lawyers and judges." Brown, 633 So.2d at 114 (Altenbernd, J., concurring in part and dissenting in part).
[7] We agree with the Fifth District that the purpose of our promulgation of rule 3.800(b) was to provide a means for defendants to correct these sentencing errors by filing a motion in the trial court within 30 days of the entry of judgment and thereby preserve any error for appellate review. See Amendments I, 696 So.2d at 1105. On this assumption, we also amended rule 9.140(d) to require that sentencing errors be preserved for appellate review, either through a contemporaneous objection or the filing of a rule 3.800(b) motion. See id. at 1106. However, as we recently discussed in Amendments II, the procedural mechanism provided by rule 3.800(b) proved far from failsafe. 761 So.2d at 1017. We did not consider in our original opinion promulgating rules 3.800(b) and 9.140(d) whether preservation should still be required if rule 3.800(b) did not in fact provide an adequate mechanism for preserving sentencing errors for appellate review.
[8] We note that in Davis, 661 So.2d at 1197, we used the term "fundamental" errors and "illegal" sentences interchangeably. However, clearly the class of errors that constitute an "illegal" sentence that can be raised for the first time in a postconviction motion decades after a sentence becomes final is a narrower class of errors than those termed "fundamental" errors that can be raised on direct appeal even though unpreserved. In Davis, we did not consider the failure to file written reasons in imposing a departure sentence to constitute an illegal sentence; however, we also did not recede from our opinions that allowed the failure to file written reasons to be raised for the first time on appeal, even though not objected to in the trial court. See, e.g., State v. Montague, 682 So.2d 1085, 1088 (Fla.1996).
[9] We recognize that pursuant to section 921.001(5), Florida Statutes (1993), the sentencing guidelines may have, for some cases, provided statutory authority for the trial court to impose a higher sentence than allowed by the "statutory maximum." See Mays v. State, 717 So.2d 515, 516 (Fla.1998). Similarly, for those defendants who committed their crimes after October 1, 1998, section 921.0024(2), Florida Statutes (1999), provides that "if the lowest permissible sentence under the code exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the code must be imposed." Prior to the enactment of these statutes, a court could not impose a guidelines sentence outside the statutory limits. See § 921.001(5), Fla. Stat. (1991).
[10] The State has conceded error in Leonard v. State, No. SC93332, and we have issued a separate opinion in that case quashing the district court's decision. See Leonard v. State, 760 So.2d 114 (Fla.2000).
[11] In this regard, we note that the defendant in Rider v. State, 724 So.2d 617 (Fla. 5th DCA 1998), review granted, 735 So.2d 1287 (Fla. 1999) (Case No. 95,060), claims that a statutory condition of probation is unconstitutionally vague. Even before the Act, however, the Second District found that a claim that a condition of probation is vague must be preserved for appeal. See Maxlow v. State, 636 So.2d 548 (Fla. 2d DCA 1994); Medina v. State, 604 So.2d 30 (Fla. 2d DCA 1992). The Fifth District cited Maxlow as authority in this case, see Rider, 724 So.2d at 619, and we agree that this challenge should have been preserved for appellate review in the trial court. We thus approve the opinion in Rider.
[12] At the oral pronouncement of sentence, the trial court ordered the defendant to submit to periodic testing, while the written order required him to submit to testing at any time. This is an inconsequential variation because section 948.03(1)(k)1., Florida Statutes (Supp. 1996), authorizes "random testing."
[13] Although in a few briefs filed recently in related cases the defendants point out that the record does not affirmatively establish whether the defendant was in fact served with the written order of probation, the absence of a conclusive showing on the appellate record regarding whether the defendant was served makes this type of claim inappropriate for direct appeal.
[14] We note that the Legislature recently amended the sentencing statute applicable to felonies committed after October 1, 1998. See ch. 97-194, Laws of Florida (creating the Florida Criminal Punishment Code, codified at sections 921.002-921.0026, Florida Statutes (1997)); see also § 921.0027, Fla. Stat. (1999). Under this statute, the trial judge must calculate the "lowest permissible sentence." See § 921.00265, Fla. Stat. (1999). Written reasons for imposing a departure sentence are still required when a judge imposes a downward departure. See §§ 921.002(1)(f), .0025, .0026, Fla. Stat. (1999); see Fla. R.Crim. P. 3.704(d)(25)(26). However, the statute allows the judge to impose a sentence "up to and including the statutory maximum for any offense," section 921.002(1)(g), without requiring the filing of any reasons for doing so. See §§ 921.002(1)(f)(h), 921.0026; Fla. R.Crim. P. 3.704(d)(25)-(26).
[15] We reject the appellant's argument in Butler v. State, 723 So.2d 865 (Fla. 1st DCA 1998), review granted, 735 So.2d 1283 (Fla. 1999) (Case No. 94,614), that the issue was preserved for review. Although the appellant objected to the sufficiency of the reasons orally given by the trial judge for the departure sentence, this objection was not directed to the trial court's non-compliance with the statute requiring the imposition of written reasons for imposing the departure sentence. Nonetheless, as explained in the text, the failure to file any reasons for imposing a departure sentence constitutes a fundamental sentencing error that can be raised on direct appeal during the window period, even in the absence of preservation.
[16] See note 18, infra.
[17] In Hyden, 715 So.2d at 961, the defendant claims that during the sentencing hearing, the trial court orally pronounced that costs for public defender fees and the county commission would be reduced to a final judgment, but instead they were imposed as a condition of probation. In Maddox, the trial court imposed six dollars of costs without statutory authority. 708 So.2d at 618.
[18] We thus approve of the following cases that are pending before this Court: Burch v. State, 724 So.2d 718 (Fla. 1st DCA 1999), review granted, 732 So.2d 325 (Fla.1999); Engeseth v. State, 725 So.2d 428 (Fla. 1st DCA 1999), review granted, 732 So.2d 326 (Fla. 1999); Adside v. State, 722 So.2d 228 (Fla. 5th DCA 1998), review granted, 729 So.2d 389 (Fla.1999); Heird v. State, 734 So.2d 1059 (Fla. 1st DCA 1998), review granted, 727 So.2d 906 (Fla.1999); Hodge v. State, 718 So.2d 832 (Fla. 4th DCA 1998), review granted, 729 So.2d 391 (Fla.1999); Locke v. State, 719 So.2d 1249 (Fla. 1st DCA 1998), review granted, No. 94,396, 760 So.2d 947 (Fla. Feb. 18, 1999); McCray v. State, 24 Fla. L. Weekly D75, ___ So.2d ___, 1998 WL 895452 (Fla. 1st DCA Dec.28, 1998), review granted, 729 So.2d 918 (Fla.1999); Sassnett v. State, 724 So.2d 174 (Fla. 1st DCA 1998), review granted, 741 So.2d 1137 (Fla.1999); Wright v. State, 720 So.2d 313 (Fla. 1st DCA 1998), review granted, 732 So.2d 330 (Fla.1999). We disapprove the opinions in these cases: Dodson v. State, 710 So.2d 159 (Fla. 1st DCA 1998), review granted, 725 So.2d 1110 (Fla.1998); Matke v. State, 23 Fla. L. Weekly D469, ___ So.2d ___, 1998 WL 55968 (Fla. 1st DCA Feb. 13, 1998); review granted, No. 92,476, 762 So.2d 918 (Fla. May 19, 1998); Mike v. State, 708 So.2d 1042 (Fla. 1st DCA 1998), review granted, 719 So.2d 893 (Fla.1998).